, UNITED STATES DISTRICT COURT
DISTRICT OF NEBRASKA

| | |
|---|---|
| SHANE HARRINGTON, H & S CLUB OMAHA, INC., CLUB 120, INC. dba INFINITY, Individually and on Behalf of Others Similarly Situated, | Case No.:  8:20-cv-412 |
| Plaintiffs, | |
| - versus - | |
| CITY OF OMAHA, DOUGLAS COUNTY NEBRASKA, and AIMEE MELTON, CHRIS JERRAM, PETE FESTERSEN, BEN GRAY, VINNY PALERMO, RICH PAHLS, BRINKER HARDING, JEAN STOTHERT, TODD SCHMADERER, STEVE MARTINEZ, TIMOTHY DUNNING, JASON MENNING, SHAWN HARPER, SCOTT BURESH, PAUL LAWSON, MIKE SUNDERMEIER, CHRIS PERKINS, VAUGHN COTTON, JAMES HALEY, RICHARD HAWTHORNE, DUANE EIVINS, KURT URKOSKI, ELIZABETH BUTLER and ADI POUR, in their individual and official capacities, | **INDIVIDUAL AND CLASS ACTION COMPLAINT AND REQUESTS FOR EQUITABLE RELIEF** |
| Defendants. | **JURY DEMANDED** |

## INTRODUCTION

Since 2017, Defendants have engaged in a custom and policy of discriminatory conduct against Plaintiffs resulting in seven-figure lost earnings and violations of Plaintiffs' civil rights and those of their dancers and members.  In 2016, Plaintiffs obtained written permission from the Omaha law department to open and operate a private membership strip club with BYOB (bring your own booze) in Omaha.  However, after opening in 2017, the City of Omaha passed a bottle club ordinance that attempted to criminalize Plaintiffs' business.  Litigation ensued including appeals that were scheduled for argument before the Nebraska Supreme Court and 8th Circuit Court of Appeals.  In the summer of 2019, the parties reached an agreement at a City Council hearing and confirmed by way of emails that Plaintiffs would be granted a liquor license at 2615

S. 120th Street if they removed the liquor from Club Omaha next door.  This settlement agreement was contingent upon Plaintiffs' opening for business next door at 2615 S. 120th Street which never occurred because the City of Omaha required major and unnecessary renovations to the property (over $150,000) and then the Coronavirus Pandemic struck and nightclubs were closed by the City of Omaha.  Plaintiffs needed to change the liquor license classification request from a retail license for a night club to a bottle club license so that social distancing could be maintained in accordance with Coronavirus health measures and their new business venture could have a reasonable chance of success.  Defendants denied Plaintiffs' request for a bottle club license, prompting this lawsuit as the State of Nebraska's Liquor Control Commission relied upon the City of Omaha's recommendation as the sole reason for their denial on October 6, 2020.

## DEFENDANTS' CUSTOM AND POLICY OF DISCRMINATORY CONDUCT

1. From March until May 2020, Plaintiffs wrote Defendants dozens of emails requesting clarification of their Coronavirus Directed Health Measures ("DHM") for the months of March, April, and May.

2. The only three responses Plaintiffs' received were a demeaning insult from Defendant Sherriff Dunning stating, "(Y)ou are not operating with a full deck," a response from the Omaha City Attorney stating, "at this point it's a state issue" and a third response on April 10, 2020, from Omaha Police Department Lt. Jake Ritonya stating that: "(A)s a courtesy, I am emailing you the updated State of Nebraska Directed Health Measure which went into effect April 10, 2020. Specifically Page 6, Section III. Paragraph 1 closes all gentleman's clubs and bottle clubs until April 30th."

3. Defendants instituted and enforced a DHM for May 2020 that specifically closed only three types of businesses, bars, strip clubs, and bottle clubs, while allowing every other

business and entity to remain open during that month.

4. The strip club and bottle club provision applied to only three businesses, Plaintiffs' Club Omaha, American Dream, and Kandi's which went out of business due to this DHM and prior unconstitutional conduct on the part of Defendants.

5. On May 27, 2020, at approximately 10:00 pm, Defendants by and through the Omaha Police Department, entered Plaintiffs' property and locked building at 2607 S. 120th Street (Club Omaha) pursuant to a DAY warrant that could only be legally executed between 7:00 am – 8:00 pm, and engaged in an illegal search for approximately 30 minutes with several armed police officers.

6. On May 27, 2020, at approximately 10:00 pm, Defendants by and through the Omaha Police Department, entered Plaintiffs' property at 2615 S. 120th Street (INFINITY) without a warrant or advance permission.

7. On May 15, 2020, approximately six Omaha police officers entered Plaintiffs' property without a warrant and attempted to enter the building without a warrant, pounding on the front door repeatedly.

8. On April 3, 2020, Defendants entered Plaintiffs' private property without a warrant or advance permission and engaged in an illegal search of the property, issuing a citation based upon this warrantless and illegal search.

9. Defendants failed to give Plaintiffs a warning that operating their business with less than ten customers constituted a violation of the DHM.

10. On March 25, 2020, Defendant Steven Martinez of the Omaha Police Department entered Plaintiffs' property without a warrant or advance permission and falsely told Plaintiffs that there was a 10-person congregation limitation including staff, when the March DHM

was limited to patrons, excluding staff.

11. Defendants entered Club Omaha at 7301 Farnam Street (formerly occupied by Plaintiffs from 2017 - 2019) without a warrant, identification, or advance permission at approximately 6:05 pm on March 12, 2019, during operating hours, and engaged in an illegal search and seizure of the property and persons therein for approximately 12 minutes, committing numerous violations of Plaintiffs' civil rights.

12. The Omaha Police Department (OPD) conducted illegal warrantless searches of Club Omaha on additional occasions, including but not limited to February 22, 2019, February 28, 2019, and March 1, 2019.

13. Plaintiffs and their contractors were accosted by approximately ten Omaha Police Officers on the afternoon of July 21, 2018, including five police vehicles and a helicopter while they were peacefully assembled at the corner of 72nd Street and Dodge Street, Omaha, NE.  Plaintiffs and their contractors were intimidated and threatened with arrest despite the fact that Plaintiffs had committed no crime and were exercising their constitutional rights to free political speech, assembly, and expression.

14. Defendant's officers chased and followed Plaintiffs and their contractors from the aforementioned public street corner to Plaintiffs' club located at 7301 Farnam Street, Omaha, NE and engaged in an illegal warrantless search of Club Omaha's private property, refusing to leave Plaintiffs' private property despite numerous requests. Plaintiffs were forced to call the FBI and 911 for protection from Defendants.

15. A subsequent affidavit from the City of Omaha's prosecutor Matthew Kuhse stated that Club Omaha violated no law during their peaceful protest of July 21, 2018.

16. Defendant's building inspectors engaged in illegal warrantless search of Club Omaha's

4

private property on March 17, 2017.

17. Club Omaha does not have a liquor license, food permit, or other license or permit that allows Defendants' officers, employees, or agents to enter Plaintiffs' property without a warrant or advance permission so they conducted their searches and seizures through fraud, lies, deceit and misrepresentation.

18. After Plaintiff Club 120, Inc. obtained the lease for the property at 2615 S. 120th Street, Omaha, NE  68144 in October 2019, the City of Omaha required Club 120, Inc. to undertake over $150,000 in unnecessary renovations to bring the property up to code.

19. Defendants had allowed the prior tenant to operate without these renovations for over seven years, renewing their liquor license every year without dispute.

20. Defendants required expensive plumbing upgrades and kitchen modifications that were unnecessary to impose costs and inconvenience upon Plaintiffs as well as requiring Plaintiffs to remove illegal walls that were constructed by the prior tenant.

21. Defendants have also required Plaintiffs to obtain a "dance permit" if they are to allow dancing as the prior tenant did, but the prior tenant never applied for or received a dance permit during their seven-plus years at that location.

22. Plaintiffs were not granted the opportunity to pick up a liquor license until March 17, 2020, and the next day the City of Omaha closed all bars in Omaha, for a period that lasted nearly three months.

23. Dance floors have been closed in Omaha for six months (and counting), making Plaintiffs' prior business model at Club 120, Inc. an impossibility.

24. Plaintiffs were only provided fourteen days until March 31, 2020, to pick up the license after which time it expired permanently.

25. Defendants defamed Plaintiff during the Omaha City Council meeting of July 28, 2020.

26. Defendants including but not limited to Melton falsely accused Plaintiffs of operating an "illegal business" and "digging a deeper hole" when Plaintiffs did nothing wrong or illegal.

27. Defendant Melton also violated ethical rules by saying, "I'm not voting for this" before the hearing was complete as a means of influencing the city council and the public and media in attendance.

28. Defendant Melton defamed Plaintiff Harrington by citing a frivolous civil lawsuit that was filed against Plaintiffs as grounds for denying the bottle club license application.

29. Defendants demanded a number of documents following the July 28, 2020 hearing which were provided by Plaintiffs, but Defendants never advised Plaintiffs if the information and documents provided were sufficient.

30. Defendants scheduled and held an adjourned meeting from July 28, 2020 to August 11, 2020 without providing Plaintiffs notice.

31. Defendants recommended denial of Plaintiffs' bottle club application based upon three factors: (a) Failure to appear at adjourned hearing of which Plaintiffs did not receive notice; (b) Receipt of two fifth degree misdemeanor violations of directed health measures that did not occur and only carry a $100 fine as penalty; and (c) For allegedly operating an unlicensed bottle club at Club Omaha since July 2019 when Club Omaha is not and never was a "bottle club" within the meaning of the City of Omaha's bottle club ordinance.

32. Defendants denied the liquor license application from a qualified applicant for Kandi's another gentlemen's club in Omaha, demonstrating a custom and policy of discrimination

against adult entertainment businesses.

33. Kandi's was denied its liquor license request by Defendants and went out of business in early 2019 at a cost and loss of hundreds of thousands of dollars to the business owner.

34. In addition, Club Omaha despite paying taxes, is not afforded the same police protection that other businesses in Omaha are provided. Virtually every time Plaintiffs have called for OPD assistance, they have not arrested people who were responsible for crimes as a means of depriving Plaintiffs of their civil rights.

35. From March 2017 to May 2020, Club Omaha was a private membership club for the following reasons: (a) Club Omaha is located on private property; (b) Only members could enter the dance part of the club; (c) Members were required to provide copies of valid picture identification and signed and adhered to a strict membership contract and code of conduct; (d) Numerous interior and exterior signs state that Club Omaha is a private membership club and that law enforcement is prohibited; (e) Club Omaha has turned away hundreds of members of the public from the property who requested to use the restrooms or ATM machines or to "check out" the club; and (f) Club Omaha has deterred unknown thousands of people from entering because they did not want to provide a copy of their ID, sign a membership contract, and be recorded on high definition security cameras by Club Omaha.

36. Since Plaintiffs operated as a private club on private property from March 2017 to May 2020, Defendants did not have a right to enter Plaintiffs' private properties or buildings without a warrant or advance permission.

37. Plaintiffs have suffered and continue to suffer monetary damages and civil rights violations as a result of Defendants' custom and policy of discriminatory conduct.

## JURISDICTION

38. This action is authorized and instituted pursuant to 42 U.S.C. § 1983 and 42 U.S.C. § 1985, Title VI of the Civil Rights Act, and the Class Action Fairness Act.   Plaintiffs also invoke this Court's jurisdiction under 28 U.S.C. § 1343(a)(1)(2)(3) and (4), 28 U.S.C. § 1331 and pendent and supplemental jurisdiction pursuant to 28 U.S.C. § 1367.

39. This case presents an actual controversy because Plaintiffs are seeking a declaration of their rights under the United States Constitution.  Under 28 U.S.C. §§ 2201 and 2202, this Court may declare the rights of Plaintiffs and grant further necessary or proper relief, including preliminary and permanent injunctive relief.

40. Defendants have also committed crimes in violation of 18 U.S.C. §241 and §242 by discriminating against Plaintiffs under color of law and by joint conspiracy.

## VENUE

41. Venue is proper under 28 U.S.C. § 1391(b) in the City of Omaha, Nebraska.

## PARTIES

42. Plaintiff Shane Harrington is an individual residing in Buffalo County, Nebraska, a taxpayer of the State of Nebraska, and principal officer of H & S Club Omaha, Inc.

43. Plaintiff H & S Club Omaha, Inc. is a Nebraska corporation and taxpayer of the State of Nebraska that owns and operates Club Omaha at 2607 S. 120th Street.

44. Plaintiff Club 120, Inc. dba INFINITY is a Nebraska corporation and taxpayer of the State of Nebraska that owns and operates INFINITY at 2615 S. 120th Street.

45. Defendant the City of Omaha is the municipal entity that operates the City of Omaha, Nebraska, including the Omaha Police Department (OPD), Omaha City Council, Omaha Fire Department and Omaha Planning Department.

46. Defendant Douglas County, Nebraska is the municipal entity that operates Douglas County, Nebraska.

47. Defendant Aimee Melton is an Omaha City Council member, Nebraska attorney and sister of Theresa Thibodeau (former appointed Senator who introduced the bottle club law to the Nebraska state legislature).

48. Defendant Chris Jerram is the Omaha City Council President.

49. Defendant Pete Festersen is an Omaha City Council member.

50. Defendant Ben Gray is an Omaha City Council member.

51. Defendant Vinny Palermo is an Omaha City Council member.

52. Defendant Rich Pahls is an Omaha City Council member.

53. Defendant Brinker Harding is an Omaha City Council member.

54. Defendant Jean Stothert is the Mayor of the City of Omaha.

55. Defendant Todd Schmaderer is the Omaha Chief of Police.

56. Defendant Steve Martinez is a Sergeant of the OPD.

57. Defendant Timothy Dunning is a Douglas County Sheriff.

58. Defendant Jason Menning is a Sergeant of the OPD.

59. Defendant Shawn Harper is an officer of the OPD.

60. Defendant Scott Buresh is an officer of the OPD.

61. Defendant Paul Lawson is an officer of the OPD.

62. Defendant Mike Sundermeier is an officer of the OPD.

63. Defendant Chris Perkins is an officer of the OPD.

64. Defendant Vaughn Scott is an officer of the OPD.

65. Defendant James Haley is an officer of the OPD.

66. Defendant Richard Hawthorne is an employee of the Omaha City Planning Department.

67. Defendant Duane Eivins is a Captain of the Omaha Fire Department.

68. Defendant Kurt Urkoski is an Inspector for the Omaha Fire Department.

69. Defendant Elizabeth Butler is the Omaha City Clerk.

70. Defendant Adi Pour is the Douglas County Health Director.

71. The individual Defendants, in their official and individual capacities, in conjunction with the City of Omaha and Douglas County, are engaged in a conspiracy to violate the constitutional rights of Plaintiffs and are engaged in a custom and policy of discriminatory conduct against Plaintiffs.

## CLAIMS FOR RELIEF

72. Defendants violated the rights of Plaintiffs guaranteed under Federal and Nebraska State law, including 42 U.S.C. § 1983, and the First, Fourth, Fifth, and Fourteenth Amendment to the United States Constitution, by conspiring to deter, intimidate, threaten, and harass Plaintiffs, illegally searching Plaintiffs' private property on numerous occasions, denying Plaintiffs due process and equal protection, and otherwise damaging Plaintiffs in violation of Nebraska State and Federal law.

## FIRST CAUSE OF ACTION

### FOURTH AMENDMENT ILLEGAL SEARCHES AND SEIZURES

73. Plaintiffs repeat and reiterate paragraphs 1 – 72 of this Complaint as if fully set forth within this cause of action.

74. Defendants engaged in illegal searches on Plaintiffs' private property on May 27, 2020, May 15, 2020, April 3, 2020, March 25, 2020, March 12, 2019, March 1, 2019, February 28, 2019, February 22, 2019, July 21, 2018 and March 17, 2017.

75. On May 27, 2020, Defendants entered Plaintiffs property at 2607 S. 120th Street (Club Omaha) with a DAY warrant at approximately 10:00 pm during business hours, two hours after the statutory deadline and conducted a search for approximately 30 minutes.

76. Defendants searched the entire premises including the dressing room where dancers were nearly nude behind curtains with signs that read "DO NOT ENTER."

77. Defendants also searched private documents in the private office of Plaintiffs'.

78. On May 27, 2020, Defendants entered Plaintiff Club 120, Inc.'s property at 2615 S. 120th Street (INFINITY) at approximately 10:00 pm with a DAY warrant and searched the entire premises.

79. Plaintiffs tried to stop Defendants from entering on May 27, 2020, specifically claiming that the DAY warrant was not valid at night, yet Defendants repeatedly pounded on Plaintiffs' locked door to gain entry and falsely stated, "it says anytime day or night.".

80. Plaintiffs, individually, and their servants, agents, employees, and contractors live and work in fear that Defendants will enter and raid Plaintiffs' property at any time without warrant or advance permission.

81. Plaintiffs have suffered monetary damages as a result of these illegal searches and seizures including but not limited to lost earnings, lost customers, lost dancers, reputation damages, legal fees, together with other costs, expenses, and damages.

82. Wherefore, Plaintiffs request equitable relief enjoining Defendants from future warrantless searches together with monetary damages, punitive damages, attorneys' fees and the costs of this action.

## SECOND CAUSE OF ACTION

**FIRST AMENDMENT VIOLATIONS OF FREE SPEECH, EXPRESSION & ASSEMBLY**

83. Plaintiffs repeat and reiterate paragraphs 1 - 82 of this Complaint as if fully set forth within this cause of action.

84. Plaintiffs, their members, and their employees and contractors utilize Club Omaha to exercise their constitutionally guaranteed rights of congregation, free speech, peaceful assembly, and free expression, including nude dancing.

85. As a result of having different moral and religious beliefs than Defendants, Plaintiffs, their members, and their contract employees have been persecuted, discriminated against, and denied due process, equal protection, and free expression and otherwise harmed and damaged by Defendants' illegal searches and seizures and invasion of privacy and illegal closure and quarantine of Plaintiffs' businesses.

86. Defendants have engaged and continue to engage in discrimination of Plaintiffs' businesses because they have moral and religious objections to what occurs inside Club Omaha, including the rights of Plaintiffs, their members, and their contract employees to express themselves by viewing or engaging in live nude dancing.

87. Defendants have conducted illegal searches and seizures on Plaintiffs' property on at least ten separate occasions May 27, 2020, May 15, 2020, April 3, 2020, March 25, 2020, March 12, 2019, March 1, 2019, February 28, 2019, February 22, 2019, July 21, 2018 and March 17, 2017 for the purpose of intimidating and discriminating against Plaintiffs, to scare people from working for Club Omaha, to promote Defendants' religious beliefs, to abridge the freedom of speech, assembly, and expression of Plaintiffs, their members, and their contract employees, and to retaliate against and punish Plaintiffs, their

members, and their contract employees from exercising their freedom of speech, assembly, and expression, and for not sharing the same religious and moral beliefs of Defendants.

88. Defendants discriminated against and retaliated against Plaintiffs for exercising their rights to protest peacefully in public on July 21, 2018 at the street corner of 72nd Street and Dodge in Omaha.

89. In addition, Defendants did not give Plaintiffs notice or warning that they were operating in violation of a DHM on April 3, 2020, when they unnecessarily conducted a sting operation to entrap Defendants in a crime they had not committed.

90. Defendants provided other businesses with warnings before issuing a citation.

91. Wherefore, Plaintiffs request equitable relief, monetary damages and punitive damages together with attorneys' fees and the costs of this action.

### THIRD CAUSE OF ACTION

### FOURTEENTH AMENDMENT EQUAL PROTECTION VIOLATIONS

92. Plaintiffs repeat and reiterate paragraphs 1 - 91 of this Complaint as if fully set forth within this cause of action.

93. Defendants denied Plaintiffs equal protection of the law by refusing to allow them to protest publicly on July 21, 2018 and other dates while allowing other individuals and entities in Omaha to peacefully protests without discrimination or retaliation.

94. Defendant denied Plaintiffs equal protection of the law by making their 2019 liquor license contingent upon dismissing meritorious civil rights litigation, when Plaintiffs were entitled to receive this license independent of pursuing or dismissing their civil rights claims.

95. Plaintiffs were required to relinquish a potential six-figure or seven-figure damage award as a condition of obtaining the City of Omaha's endorsement for a liquor license for Club 120, Inc.

96. Defendants denied Plaintiffs equal protection of the law by failing to provide written or oral notice of Plaintiffs' August 11, 2020 public hearing regarding Plaintiffs' application and by refusing to reschedule the hearing even when they had not provided notice.

97. Defendants denied Plaintiffs equal protection of the law by unnecessarily requiring Club 120, Inc. dba INFINITY to spend $150,000 on renovations to their property when the prior tenant, a similarly situated entity with an identical property was permitted to operate without renovations or repairs for over seven years.

98. Defendants denied Plaintiffs equal protection of the law by approving the prior tenant for a liquor license and renewing the license for seven years despite multiple shootings including a murder in the parking lot, drug trafficking and consumption, gang activity and frequent fighting, underage drinking, drunk driving and over-serving, and counterfeit currency distribution, while denying Plaintiff Club 120, Inc.'s application for a liquor license at the same location (a much more qualified applicant) without reasonable justification.

99. Defendants denied Plaintiffs equal protection of the law by requiring Plaintiffs to obtain a dance permit for Club 120, Inc. when the prior tenant was a night club with dancing for over seven years and never once applied for or obtained a dance permit.

100.     Defendants denied Plaintiffs equal protection of the law by permitting a prior strip club the American Dream to operate at 2607 S. 120th Street, Omaha, NE without interference or discrimination while arbitrarily discriminating against Plaintiffs who are

operating a strip club at the same address.

101.    Defendants denied Plaintiffs equal protection of the law by requiring Plaintiffs to

obtain a dance permit for Club 120, Inc. when clubs with dancing at other locations in

Omaha are permitted to operate without a dance permit.

102.    Defendants have delayed and otherwise refused to grant a dance permit to

Plaintiffs though an application was filed July 31, 2020.

103.    Defendants have denied Plaintiffs equal protection of the law by repeatedly

entering and searching Plaintiffs' private property without a warrant, including but not

limited to warrantless searches on May 27, 2020, May 15, 2020, April 3, 2020, March 25,

2020, March 12, 2019, March 1, 2019, February 28, 2019, February 22, 2019, July 21,

2018 and March 17, 2017 while obtaining warrants to search other private properties in

the City of Omaha.

104.    Defendants have denied Plaintiffs equal protection of the law by specifically

targeting Plaintiffs and Club Omaha for discriminatory treatment, including warrantless

searches, because of Plaintiffs' form of speech, expression, and assembly.

105.    Defendants have denied Plaintiffs equal protection of the law by giving other

businesses notice of DHM violations before serving citations, whereas Plaintiffs were

given no notice of operating in violation of the DHM before their April 3, 2020 citation.

106.    Defendant denied Plaintiffs equal protection of the law be holding them

accountable to a mandatory six-foot standard that no other business was held to.

Plaintiff's citation states in part, "THERE MUST BE A MINIMUM SOCIAL

DISTANCE OF SIX FEET BY ATTENDEES" but the actual DHM states "whenever

possible" and does not make this mandatory.

15

107.     Defendant denied Plaintiffs equal protection of the law by failing to arrest individuals at Club Omaha who have committed crimes including but not limited to the assaults of Plaintiffs' security guards that occurred on September 23, 2020, and other similar occurrences.

108.     Defendants denied Plaintiffs equal protection of the law due to the fact that Plaintiffs' members, customers, employees, and contractors, are largely minorities and other protected class members, including women, African-Americans, Latinos, and Asians, along with a high percentage of members of the LBGTQ community, including lesbians, bisexuals, gays, transvestites, and queers.

109.     Club Omaha is a place of assembly entitled to constitutional protection. Defendants allow religions, professional associations, fraternities, sororities, and other clubs and entities to assemble peacefully in public with alcohol without harassment, frequent searches, and arbitrary limitations on hours yet Plaintiffs are subject to discrimination and harassment based upon their manner of assembly.

110.     Wherefore, Plaintiffs request monetary and punitive damages together with attorneys' fees and the costs of this action.

## FOURTH CAUSE OF ACTION

### VIOLATIONS OF TITLE VI OF THE CIVIL RIGHTS ACT

111.     Plaintiffs repeat and reiterate paragraphs 1 – 110 of this Complaint as if fully set forth within this cause of action.

112.     Defendants, including but not limited to the City of Omaha and Douglas County, Nebraska, receive federal funding that subjects them to liability under the Civil Rights Act of 1964,

16

113.     Defendants have violated Title VI of the Civil Rights Act by discriminating against Plaintiffs' members, customers, employees and contractors who are members of protected classes, including minorities, women, the disabled, African-Americans, Latinos, and Asians, and other non-whites along with a high percentage of members of the LBGTQ community, including lesbians, bisexuals, gays, transvestites, and queers.

114.     Defendants have violated the civil rights of the aforementioned protected individuals with illegal searches and seizures, invasion of privacy and trespass, lies, fear, intimidation, retaliation, criminal citations, and threats of criminal prosecution, incarceration and fines.

115.     As a result of the foregoing, Plaintiffs and their members, employees, and contractors have been discriminated against by Defendants in violation of Title VII of the Civil Rights Act, entitled Plaintiffs to monetary and punitive damages together with equitable relief and the cost of this action.

## FIFTH CAUSE OF ACTION

### DUE PROCESS VIOLATIONS

116.     Plaintiffs repeat and reiterate paragraphs 1 – 115 of this Complaint as if fully set forth within this cause of action.

117.     Plaintiffs sent dozens of emails to Defendants from March 2020 to June 2020, requesting information regarded the Coronavirus closures and limitations pursuant to the DHM instituted in Omaha and Douglas County since March 2020.

118.     The only three responses Plaintiffs' received were a demeaning insult from Defendant Sherriff Dunning stating, "(Y)ou are not operating with a full deck," a response from the Omaha City Attorney stating, "at this point it's a state issue" and a

third response on April 10, 2020, from Omaha Police Department Lt. Jake Ritonya stating that: "(A)s a courtesy, I am emailing you the updated State of Nebraska Directed Health Measure which went into effect April 10, 2020. Specifically Page 6, Section III. Paragraph 1 closes all gentleman's clubs and bottle clubs until April 30th."

119.     Gentleman's clubs were not required to close prior to April 10, 2020.

120.     However, Defendants served Plaintiff Harrington with a criminal citation on April 3, 2020, one week prior to this notice.

121.     Defendants did not notify Plaintiffs that they were operating in violation of the DHM at any time between March 18 and April 3, 2020 and Plaintiffs received permission to operate from the Douglas County Health Department on March 18, 2020.

122.     Defendants did not provide Plaintiffs notice of their August 11, 2020, liquor hearing before the Omaha City Council and did not consent to reschedule the hearing.

123.     Defendants held Plaintiffs accountable for two fifth degree misdemeanor tickets that were issued in error and will be ultimately dismissed, in violation of the American legal bedrock principle that people are innocent until proven guilty.

124.     Defendants also referenced a frivolous FLSA claim filed by an aggrieved stripper that will not be resolved for years when businesses are sued all the time for frivolous and baseless claims that are meritless.

125.     Defendants illegally searched Plaintiffs' properties without a warrant or advance permission on at least ten occasions in violation of Plaintiffs' due process rights.

126.     Plaintiffs have suffered monetary damages as a result of these due process violations including but not limited to lost earnings, lost customers, lost dancers, reputation damages, legal fees, together with other costs, expenses, and damages.

## SIXTH CAUSE OF ACTION

### ESTABLISHMENT CLAUSE VIOLATIONS

127.    Plaintiffs repeat and reiterate paragraphs 1 – 126 of this Complaint as if fully set forth within this cause of action.

128.    Defendants' DHM violated the Establishment Clause by permitting Churches to open and operate during May 2020 while requiring bars, bottle clubs, and strip clubs to close May 2020.

129.    There is no medical or scientific reason that Churches are safer than bars, bottle clubs, and strip clubs.

130.    There is no medical or scientific reason that Churches are less likely to spread COVID-19 than bars, bottle clubs or strip clubs.

131.    Defendants' DHM and its enforcement allowed for the transmission of a communicable disease (COVID-19) at Churches while requiring bars, bottle clubs and strip clubs to close entirely.

132.    Defendants are highly religious Christians who have greater loyalty to their Bible than the United States Constitution and the Nebraska Constitution.

133.    Defendants attend the same churches, pray to the same God and Jesus, and are in alliance against Plaintiffs, their dancers and patrons due to religious reasons.

134.    Defendants' selective and discriminatory DHM policies in May 2020 demonstrate an arbitrary governmental preference for religion over commerce.

135.    Defendants' selective and discriminatory DHM policies in May 2020 demonstrate an arbitrary governmental preference for churches over bars, bottle clubs, and strip clubs.

136.    As further demonstration of Defendants' preferential treatment toward religion,

the May 2020 DHM also did not require people in Church to wear face masks while other non-religious businesses were required to use face masks.

137. Wherefore, Plaintiffs request monetary damages for Defendants' Establishment Clause violations, including lost earnings, overhead paid for the month of May 2020, including property taxes, utilities, insurance, and all other non-reimbursed expenses together with attorneys' fees and the costs of this action and punitive damages.

## SEVENTH CAUSE OF ACTION

### VIOLATIONS OF 42 U.S.C. § 1985

138. Plaintiffs repeat and reiterate paragraphs 1 - 137 of this Complaint as if fully set forth within this cause of action.

139. 42 U.S.C. § 1985(2) is captioned, "(O)bstructing justice; intimidating party, witness, or juror."

140. Defendants violated 42 U.S.C. § 1985(2) by conspiring to deter, hinder, and obstruct, by intimidation, threat, and force, Plaintiffs from working at Club Omaha, including but not limited to the 10-plus times Defendants entered Club Omaha for warrantless searches and the interference with Plaintiffs' public protesting.

141. Defendants further violated 42 U.S.C. § 1985(2) by conspiring to injure, retaliating against, and punishing Plaintiffs for having exercised their right to seek judicial relief (for prior civil rights lawsuits against Defendants) and chilling their exercise of that right in the future.

142. Defendants further violated 42 U.S.C. § 1985(2) by conspiring for the purpose of impeding, hindering, obstructing, and defeating the due course of justice with intent to deny the Plaintiffs equal protection of the laws.

20

143.　　　Defendants further violated 42 U.S.C. § 1985(2) by conspiring to injure the Plaintiffs for attempting to enforce their rights to equal protection.

144.　　　Defendants violated 42 U.S.C. § 1985(3) by conspiring to injure the Plaintiffs, by force, intimidation, and threat, through their persons and property, on account of their support and advocacy in a legal manner challenging and protesting laws related to Plaintiffs and Club Omaha, including public protesting on July 21, 2018.

145.　　　Defendants further violated 42 U.S.C. § 1985(3) by depriving Plaintiffs of having and exercising rights and privileges that they are guaranteed as citizens of the United States of America.

146.　　　Wherefore, Plaintiffs request equitable relief and monetary damages. including but not limited to lost earnings, lost overhead, legal fees, together with other costs of this action and an order enjoining Defendants from future warrantless searches.

## EIGHTH CAUSE OF ACTION

### PROMISSORY ESTOPPEL

147.　　　Plaintiffs repeat and reiterate paragraphs 1 - 146 of this Complaint as if fully set forth within this cause of action.

148.　　　Before Plaintiffs opened Club Omaha in the City of Omaha in March 2017, they obtained written permission from the City of Omaha's law department memorialized in the following emails:

Mon 10/31/2016 4:19 PM

See below.  I hope this answers your question.

Paul D. Kratz
Omaha City Attorney
1819 Farnam Street, Suite 804
Omaha, Nebraska 68183

21

402-444-5115
paul.kratz@cityofomaha.org

---------- Forwarded message ----------
From: William J. Acosta-Trejo (Law) <william.acosta-trejo@cityofomaha.org>
Date: Mon, Oct 31, 2016 at 9:26 AM
Subject: Re: Bottle Club in Omaha
To: "Paul Kratz (Law)" <paul.kratz@cityofomaha.org>

Omaha doesn't have anything that's named a "bottle club".  He simply describes a private club that's not open to the public.  I assume that's members-only where the members bring their own alcohol in.  Omaha just follows state law, which says you don't need a license to provide alcohol to your "guests" or to yourself.  So if members bought alcohol, took the alcohol to the club, stored it at the club, and only provided it to themselves and their guests (people who have not paid them for the drinks) and the club doesn't provide the alcohol in exchange for getting paid, then I think state law allows this without a license.  There's no need for an ordinance or anything local authorizing it.

A license is needed if it's a place open to the general public or the club provides alcohol in exchange for payment.  If the payment (dues) are just for use of the premises, food, etc., and not for access to alcohol, then no license is required under state law or any city ordinances. (emphasis added)

William Acosta-Trejo
Assistant City Attorney
City of Omaha - Law Department
1819 Farnam Street, Suite 804
Omaha, NE  68183
Telephone:  (402) 444-5115
Facsimile:  (402) 444-5125
E-Mail: william.acosta-trejo@cityofomaha.org

On Tue, Oct 25, 2016 at 3:58 PM, Paul Kratz (Law) <paul.kratz@cityofomaha.org> wrote: Please research and let me know your answer.

Paul D. Kratz
Omaha City Attorney
1819 Farnam Street, Suite 804
Omaha, Nebraska 68183
402-444-5115
paul.kratz@cityofomaha.org

---------- Forwarded message ----------
From: <evan@evanspenceresq.com>
Date: Tue, Oct 25, 2016 at 3:54 PM
Subject: Bottle Club in Omaha
To: paul.kratz@cityofomaha.org

Dear Mr. Kratz:

I am writing to inquire as to whether or not the City of Omaha would permit a bottle club closed to the public for private events without a liquor license that complies with the Nebraska State liquor law.  Such clubs are permitted in the cities of Grand Island and Hastings but prohibited in the City of Lincoln.  There appears to be nothing in the Omaha City Code that prohibits such a club.

Please let me know at your earliest convenience.

Evan Spencer
Tel. 917.547.4665
305 Broadway, 7th Floor
New York, NY   10007
Evan@EvanSpencerEsq.com
www.EvanSpencerEsq.com

149.     After receiving permission to open and operate Club Omaha in the City of Omaha, Plaintiffs closed their three strip clubs in Grand Island, Hastings, and Buffalo County including both Midwest Girls Club and Paradise City in reliance upon the promises made by the City of Omaha prior to opening.

150.     After opening Club Omaha in March 2017, Defendants engaged in unethical, unconstitutional, tortious, and criminal conduct by changing the law in the City of Omaha to attempt to criminalize Plaintiffs' business and entering Plaintiffs' private property without a warrant or advance permission to harass and intimidate Plaintiffs on at least ten separate occasions over the course of three years.

151.     If Defendants had not granted Plaintiffs permission to open and operate Club Omaha, they would not have sold and/or closed their three strip clubs they were operating in 2016 in central Nebraska.

152.     As a result of the foregoing, Plaintiffs have suffered and continue to suffer monetary damages, but not limited to three lost businesses, lost earnings, lost overhead, together with attorneys' fees and the costs of this action.

## NINTH CAUSE OF ACTION

## UNJUST ENRICHMENT

153.     Plaintiffs repeat and reiterate paragraphs 1 - 152 of this Complaint as if fully set forth within this cause of action.

154.     Defendants required closure of all bars, strip clubs, and bottle clubs in the City of Omaha for the entire month of May 2020.

155.     These three types of businesses were required to be closed while all other businesses in the City of Omaha and Douglas County were permitted to operate.

156.     There was no medical or scientific basis for closing these three types of businesses and allowing all other businesses to operate during May 2020.

157.     Despite these mandatory closures, Plaintiffs were required to pay their property taxes, licensing fees, and other fees to the City of Omaha during this month despite not being allowed to operate.

158.     As such, Defendants were unjustly enriched in the amount of property taxes, licensing fees and other fees paid by Plaintiffs (8.5% of 2020 annual total) when they were forbidden to operate.

159.     Defendants cannot pay their own salaries and expenses with Plaintiffs' tax dollars while forbidding Plaintiffs from operating; Plaintiffs are entitled to reimbursement of taxes paid for the time its business was forced to be closed.

## TENTH CAUSE OF ACTION

## BREACH OF CONTRACT

160.     Plaintiffs repeat and reiterate paragraphs 1 - 159 of this Complaint as if fully set forth within this cause of action.

161.    On or about July 26, 2019, the parties reached a settlement agreement regarding three pending cases in the Nebraska state and federal court systems.

162.    Plaintiffs agreed to dismiss three lawsuits and stop protesting publicly if Defendants granted Plaintiffs a liquor license next door to Club Omaha at Club 120, Inc.

163.    Defendants did not grant Plaintiffs a useable liquor license, only an opportunity to pick up a $701 license on March 17, 2020, that Plaintiffs could not use due to the mandatory closure of Plaintiffs' business due to the Coronavirus COVID-19 pandemic.

164.    Defendants have refused to grant Plaintiffs a bottle club license at Club 120, Inc. in violation of this settlement agreement.

165.    Previously, Plaintiffs and the City of Omaha entered into a written agreement in 2016 wherein the City of Omaha granted Plaintiffs permission to open and operate Club Omaha in the City of Omaha.

166.    After Plaintiffs opened the club, Defendants have spent the last 3-plus years doing everything in their power to close Plaintiffs' businesses, including the attempted criminalization of the business model that they granted Plaintiffs permission to operate and the denial of Plaintiffs' bottle club license application.

167.    As a result of the foregoing, Plaintiffs have spent over $150,000 to renovate Club 120, Inc., have paid one full year of rent and utilities (over $50,000), and have been repeatedly denied the opportunity to open.

168.    Plaintiffs owe $120,000 for the remaining years of their lease of Club 120, Inc.

169.    Wherefore, Plaintiffs request compensatory damages for breach of contract by Defendants, including but not limited to lost earnings, lost equity, wasted capital, together with legal fees and the costs of this action.

## ELEVENTH CAUSE OF ACTION

### TRESPASS

170.     Plaintiffs repeat and reiterate paragraphs 1 - 169 of this Complaint as if fully set forth within this cause of action.

171.     Defendants, including but not limited to the OPD and Douglas County Sheriffs' Department, by and through their officers, have trespassed on Plaintiffs' private property on dates including but not limited to May 27, 2020, May 15, 2020, April 3, 2020, March 25, 2020, March 12, 2019, March 1, 2019, February 28, 2019, February 22, 2019, July 21, 2018 and March 17, 2017.

172.     Plaintiffs have suffered monetary damages as a result of these illegal trespasses including but not limited to lost earnings, lost customers, lost dancers, reputation damages, legal fees, together with other costs, expenses, and damages.

## TWELFTH CAUSE OF ACTION

### INVASION OF PRIVACY – VIOLATIONS OF NRS SECTIONS 20-201 and 20-203

173.     Plaintiffs repeat and reiterate paragraphs 1 – 172 of this Complaint as if fully set forth within this cause of action.

174.     Defendants, including but not limited to the OPD and Douglas County Sheriffs' Department, have invaded Plaintiff Shane Harrington's privacy and that of his contractors, employees, and patrons on dates including but not limited to the following: May 27, 2020, May 15, 2020, April 3, 2020, March 25, 2020, March 12, 2019, March 1, 2019, February 28, 2019, February 22, 2019, July 21, 2018 and March 17, 2017.

175.     Plaintiffs have suffered monetary damages as a result of these invasions of privacy including but not limited to lost earnings, lost customers, lost dancers, reputation

damages, legal fees, together with other costs, expenses, and damages.

## CIVIL CONSPIRACY

176.     Defendants are jointly and severally liable for engaging in a conspiracy to commit the aforementioned torts against Plaintiffs.

## CLASS ALLEGATIONS

177.     The class is initially defined as all bars in Douglas County, including Club 120, Inc. dba INFINITY, that were required to close for the month of May 2020, while Defendants allowed all other business and entities in Douglas County to remain open.

178.     Defendants violated the constitutional rights of Club 120, Inc. and the class by forcing these businesses to remain closed during such time that all other businesses were allowed to open.

179.     There was no medical or scientific reason for this governmental determination which was therefore arbitrary.

180.     Defendants closures were based upon their personal preference of churches, restaurants, and all other non-essential businesses over bars.

181.     This action is properly maintainable as a class action.

182.     The class is so numerous that joinder of all members is impracticable.

183.     The number and identities of class members can be determined through various methods, including Defendants' records.

184.     The disposition of their claims in a class action will be of benefit to the parties and the court.

185.    A class action is superior to other methods for the fair and efficient adjudication of the claims herein asserted, and no unusual difficulties are likely to be encountered in the management of this action as a class action.

186.    The likelihood of individual class members prosecuting separate claims is remote.

187.    There is a well-defined community of interest in the questions of law and fact involved affecting members of the class.

188.    Among the questions of law and fact which are common to the class, and which predominate over questions affecting any individual class member are, the following:

189.    Whether Defendants violated the First Amendment rights of Plaintiff Club 120, Inc. and the class;

190.    Whether Defendants violated the Equal Protection rights of Plaintiff Club 120, Inc. and the class;

191.    Whether Defendants violated the Due Process rights of Plaintiff Club 120, Inc. and the class;

192.    Whether Defendants' acts were willful entitling Plaintiffs class to treble and/or punitive damages.

193.    Plaintiff Club 120, Inc. is a member of the class and is committed to prosecuting this action.

194.    Plaintiff's claims are typical of the claims of the other members of the class.

195.    Plaintiff does not have interests antagonistic to or in conflict with those he seeks to represent.  Plaintiff is, therefore, an adequate representative of the proposed class.

196.    The likelihood of individual class members prosecuting separate individual actions is remote due to the relatively small loss suffered by class members as compared to the burden and expense of prosecuting litigation of this nature and magnitude.

197.    Absent a class action, Defendants are likely to avoid liability for their wrongdoing, and the class members are unlikely to obtain redress for the wrongs alleged herein.

198.    Adjudication of this case on a class-wide basis is manageable by this court.

199.    Plaintiffs suffered damages in excess of $10,000 and the class suffered damages in excess of $5 million.

## DEMAND FOR JURY TRIAL

200.    Plaintiffs hereby demand trial by jury on all claims so triable.

201.    Pursuant to United States District Court of Nebraska Local Rule 40.1(b), Plaintiffs request the trial be held in Omaha, Nebraska.

## PRAYER FOR RELIEF

Plaintiffs pray for the following relief:

A)  Judgment declaring that Defendants' searches and seizures of May 27, 2020, April 3, 2020, March 12, 2019, March 1, 2019, February 28, 2019, February 22, 2019, July 21, 2018 and March 17, 2017 February 22, 2019 were unconstitutional, constituted trespass, invasion of privacy, and were otherwise unlawful;

B)  Judgement declaring that Defendants' violated Plaintiffs right to peacefully protest publicly on July 21, 2018 and subsequent dates;

C)  Judgment declaring that Defendants breached the parties' 2019 settlement agreement;

D)  Judgment declaring that Defendants' bottle club ordinance may not be enforced

against Plaintiffs due to promissory estoppel;

E)  Judgment against Defendants, jointly and severally, for all statutory damages, past, present, and future general and special damages on all individual and class causes of action;

F)  Punitive damages to punish Defendants and deter such conduct in the future;

G)  Equitable relief enjoining Defendants from future warrantless searches;

H)  Attorneys' fees, interest, and costs as may be allowed by law; and

I)  Such other and further relief as is just and necessary.

Respectfully Submitted,

October 11, 2020

By: /s/ Evan Spencer
Evan Spencer
Attorney at Law
NY Bar# 278681205
305 Broadway, 7th Floor
New York, NY   10007
Tel. 917.547.4665
Evan@EvanSpencerEsq.com
ATTORNEY FOR PLAINTIFFS

## CERTIFICATE OF SERVICE

I hereby certify that on October 11, 2020, I electronically filed this Complaint with the Clerk of the Court using the CM/ECF system.

s/Evan Spencer
Evan Spencer
