IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

SHANE HARRINGTON, Individually and on
Behalf of Others Similarly Situated; H & S
CLUB OMAHA, INC., Individually and on
Behalf of Others Similarly Situated; and CLUB
120, INC., Individually and on Behalf of Others
Similarly Situated;

       Plaintiffs,

    vs.

CITY OF OMAHA, DOUGLAS COUNTY,
NEBRASKA, AIMEE MELTON, In Their
Individual and Official Capacities; CHRIS
JERRAM, In Their Individual and Official
Capacities; PETE FESTERSEN, In Their
Individual and Official Capacities; BEN GRAY,
In Their Individual and Official Capacities;
VINNY PALERMO, In Their Individual and
Official Capacities; RICH PAHLS, In Their
Individual and Official Capacities; BRINKER
HARDING, In Their Individual and Official
Capacities; JEAN STOTHERT, In Their
Individual and Official Capacities; TODD
SCHMADERER, In Their Individual and
Official Capacities; STEVE MARTINEZ, In
Their Individual and Official Capacities;
TIMOTHY DUNNING, In Their Individual and
Official Capacities; JASON MENNING, In
Their Individual and Official Capacities;
SHAWN HARPER, In Their Individual and
Official Capacities; SCOTT BURESH, In Their
Individual and Official Capacities; PAUL
LAWSON, In Their Individual and Official
Capacities; MIKE SUNDERMEIER, In Their
Individual and Official Capacities; CHRIS
PERKINS, In Their Individual and Official
Capacities; VAUGHN COTTON, In Their
Individual and Official Capacities; JAMES
HALEY, In Their Individual and Official
Capacities; RICHARD HAWTHORNE, In Their
Individual and Official Capacities; DUANE
EIVINS, In Their Individual and Official

8:20-CV-412

**MEMORANDUM & ORDER**

Capacities; KURT URKOSKI, In Their
Individual and Official Capacities; ELIZABETH
BUTLER, In Their Individual and Official
Capacities; ADI POUR, In Their Individual and
Official Capacities; and JOHN HENIGE, In
Their Individual and Official Capacities;

Defendants.

## I.  INTRODUCTION

This matter is before the Court on the Motion to Dismiss for Failure to State a Claim, Filing 69, of defendants Douglas County, Nebraska, Timothy Dunning, and Adi Pour. Also before the Court is the Motion to Dismiss for Failure to State a Claim, Filing 73, of defendants Scott Buresh, Elizabeth Butler, City of Omaha, Vaughn Cotton, Duane Eivins, Pete Festerson, Ben Gray, James Haley, Brinker Harding, Shawn Harper, Richard Hawthorne, Chris Jerram, Paul Lawson, Steve Martinez, Aimee Melton, Jason Menning, Rich Pahls, Vinny Palermo, Chris Perkins, Todd Schmaderer, Jean Stothert, Mike Sundermeier, and Kurt Urkoski. Defendants filed an Unopposed Motion to Add Defendant John Henige to City Defendant's Motion to Dismiss. Filing 86.

Under 42 U.S.C. § 1983, Plaintiffs assert the following causes of action: Fourth Amendment Illegal Searches and Seizures; First Amendment Violations of Free Speech, Expression, and Assembly; Fourteenth Amendment Equal Protection Violations; Title VI Civil Rights Act Violations; Due Process Violations; and Establishment Clause Violations. *See* Filing 68. Additionally, Plaintiffs assert a 42 U.S.C. § 1985 conspiracy claim against defendants, as well as state law claims of promissory estoppel and breach of contract. The defendants' unopposed motion to add defendant Henige to the defendants' motion to dismiss is granted.

In this lawsuit, Plaintiffs have included every conceivable claim and defendant. Plaintiffs sue the Mayor, the entire Omaha City Council, seemingly any police officer they have

encountered, the Director of the Douglas County Health Department, even the Omaha City Clerk, for claims which can generously be described as a laundry-list of possible claims available under the United States Constitution. This Court has previously referred to this strategy—used by this same plaintiff and affiliated entities—as the "kitchen sink" approach, where the Plaintiffs included everything in their lawsuit but the kitchen sink. *Harrington v. Strong,* 363 F.Supp.3d 984, n. 5.

In this case, this Court believes Plaintiffs have done one better. The kitchen sink is included. Defendants' motions to dismiss are granted in their entirety.

## II. FACTS

Plaintiff Shane Harrington ("Harrington") is an individual residing in Buffalo County, Nebraska, and a principal officer of H&S Club Omaha, Inc. and Club 120, Inc. Filing 68 at 19. Plaintiff H & S Club Omaha, Inc. ("Club Omaha") is a Nebraska corporation operating in Omaha, Nebraska. Filing 68 at 19. Plaintiff Club 120, Inc. ("Club 120") is a Nebraska corporation that owns and operates INFINITY in Omaha. Filing 68 at 19.[1]

Defendant City of Omaha is the municipal entity that operates the City of Omaha, Nebraska, including the Omaha Police Department ("OPD"), Omaha City Council ("City Council"), Omaha Fire Department, and Omaha Planning Department. Filing 68 at 19. Defendants Aimee Melton, Pete Festersen, Ben Gray, Vinny Palermo, Rich Pahls, and Brinker Harding are members of the City Council, and Chris Jerram is the City Council President. Filing 68 at 20. Defendant Jean Stothert is the mayor of the City of Omaha. Filing 68 at 20. The following Defendants are members of the OPD: Todd Schmaderer (Omaha Chief of Police), Steve Martinez (sergeant), Jason Menning (sergeant), John Henige (officer), Shawn Harper (officer), Scott Buresh (officer), Paul Lawson (officer), Mike Sundermeier (officer), Chris Perkins (officer), Vaughn Scott

---

[1] The Court refers to Harrington, Club Omaha, and Club 120 as "Plaintiffs" in this order.

(officer), and James Haley (officer). [Filing 68 at 20](). Defendant Richard Hawthorne is an employee of the Omaha City Planning Department. [Filing 68 at 20](). Defendants Duane Eivins (captain), and Kurt Urkoski (inspector) are members of the Omaha Fire Department. [Filing 68 at 20-21](). Defendant Elizabeth Butler is the Omaha City Clerk.[2] [Filing 68 at 21]().

Defendant Douglas County, Nebraska is the municipal entity that operates Douglas County, Nebraska. [Filing 68 at 19](). Defendant Timothy Dunning was the Douglas County, Nebraska Sheriff at the time of the filing of this lawsuit and at the time of the requisite facts pled in the lawsuit. [Filing 68 at 20](). Defendant Dr. Adi Pour is the Douglas County Health Director. [Filing 68 at 21]().[3]

## A. Initial COVID-19 Pandemic Measures

On March 18, 2020, Pour issued a DHM ("March 18 DHM") in her position as Director of the Douglas County Health Department.[4] [Filing 70-2](). The March 18 DHM contained several orders relating to the COVID-19 pandemic: "All public gatherings within the jurisdiction of the Douglas County Health Department with an expected presence of more than ten individuals taking place between March 18 and April 30, 2020 are hereby prohibited;" "for gatherings below this size [10], if a minimum social distance of six feet between attendees cannot be maintained . . . the gathering is prohibited." [Filing 70-2 at 1-2](). The DHM did not apply to "courts of law, medical providers, public utilities, critical county and city operations, etc." Filing 70-2 at 1-2. The March 18 DHM was "issued as a result of the worldwide pandemic of COVID-19 disease," and was

---

[2] The Court collectively refers to the aforementioned defendants as the "City Defendants."

[3] The Court collectively refers to Defendants Douglas County, Dunning, and Pour as the "County Defendants."

[4] While not contained within the Complaint, this information is taken from the March 18 DHM, which is necessarily embraced by the Complaint. *See Ashford v. Douglas Cnty.*, 880 F.3d 990, 992 (8th Cir. 2018) ("When considering a Rule 12(b)(6) motion, the court generally must ignore materials outside the pleadings, but it may consider some materials that are part of the public record or do not contradict the complaint, as well as materials that are necessarily embraced by the pleadings.") (quoting *Smithrud v. City of St. Paul*, 746 F.3d 391, 395 (8th Cir. 2014). Plaintiffs' Complaint specifically references the Douglas County DHMs dated March 18 and March 20, 2020. *See* [Filing 68 at 2-3](). In ¶¶19 and 21.

"intended to reduce the likelihood of exposure to COVID-19, thereby slowing the spread of COVID-19 to communities worldwide." Filing 70-2 at 2. The March 18 DHM requested the Douglas County "Sheriff and all Chiefs of Police in the County ensure compliance with and enforcement of" the March 18 DHM. Filing 70-2 at 2. On this same date, Plaintiffs contacted the Douglas County Board of Health via telephone and were informed Club Omaha could operate with a ten-person capacity and personal protective equipment ("PPE"). Filing 68 at 2-3.[5]

On March 20, 2020, Pour issued an amended DHM ("March 20 DHM")[6] to bring the Douglas County DHM in line with a DHM issued by the State of Nebraska on March 19, 2020. Filing 70-3 at 2. The March 20 DHM expanded upon the March 18 DHM. The March 20 DHM kept the prohibition of public gatherings of more than ten but clarified the restrictions to mean "ten (10) patrons, customers or other invitees, excluding staff." Filing 70-3 at 2. The March 20 DHM "include[d], but [was] not limited to, the following spaces[:]"

> [S]chools, gymnasiums, salons, fitness centers, auditoriums, stadiums, arenas, large event conference rooms, meeting halls, theaters, libraries, or any other confined indoor or outdoor spaces. This Order also includes, but is not limited to, the following events, weddings, funerals, parades, fairs, festivals, concerts and other indoor and outdoor events.

Filing 70-3 at 2.

In addition, "[l]iquor, beer and wine sales [were] restricted to carry-out sales and delivery only." Filing 70-3 at 2. "No onsite consumption [was] permitted," including "bars, taverns, and

---

[5] On March 16 and 26, April 4, 6, and 25, May 4, 11, 13, 15, 16, and 20, 2020, Plaintiffs sent emails to various defendants regarding clarification and enforcement of Directed Health Measures ("DHMs") relating to the COVID-19 pandemic. Filing 68 at 2, 4-8. Plaintiffs allege they did not receive any response to their communications sent on those dates. Filing 68 at 2, 4-8.

[6] Plaintiffs discuss an "April 20, 2020 DHM," but based on the quoted language and the dates, it appears that Plaintiffs meant to again reference the March 20, 2020, DHM rather than any April 20, 2020, DHM. Filing 68 at 5. In ¶30, Plaintiffs allege they emailed various defendants asking permission to reopen on May 4, 2020, under the same conditions "which Governor Ricketts is allowing" various businesses to operate. Filing 68 at 7. Plaintiffs plainly refer to the Nebraska Department of Health and Human Services ("DHHS") DHM dated April 30, 2020, which went into effect May 4, 2020. Filing 70-5. Thus, the DHHS DHM dated April 30, 2020, is necessarily embraced by the Complaint and also qualifies a public record.

private clubs, regardless of name or characterization." Filing 70-3 at 2. The March 20 DHM provided for a hearing process regarding the "factual bases" and "reasonableness of the ordered measures" of the DHM. Filing 70-3 at 2-4. The DHM took effect when it was "disseminated to the mass media." Filing 70-3 at 3.

On March 25, 2020, the Nebraska Department of Health and Human Services ("DHHS") issued a DHM for Cass, Douglas, and Sarpy counties, effective immediately and continuing through April 30, 2020 ("the March 25 DHHS DHM"). Filing 70-4 at 2. The terms were similar to the March 20 DHM issued by Douglas County. Gatherings, "defined as any event or convening that brings together more than ten (10) patrons, customers or invitees, excluding staff, in a single room or single space at the same time," were prohibited. Filing 70-4 at 2. The same liquor, beer, and wine restrictions applied, with no onsite consumption permitted at "bars, taverns, and private clubs, regardless of name or characterization." Filing 70-4 at 3. The March 25 DHHS DHM also provided for a hearing process "to determine if the factual bases for the [DHM] exist and the reasonableness of the ordered measures." Filing 70-4 at 5.

On April 30, 2020, the Nebraska DHHS issued a DHM for Douglas County, effective May 4, 2020 through May 31, 2020 (the "May 4 DHHS DHM"). Filing 70-5 at 2. The May 4 DHHS DHM provided that "Liquor, beer, and wine sales are restricted, unless served with a meal . . . to carry-out sales and delivery only, to the extent permitted by law. This includes bars, taverns, and private clubs, regardless of name or characterization." Filing 70-5 at 4. "In order to mitigate COVID-19 related food disruption, and maximize meal availability food and beverage sales at restaurants, bars, taverns, private clubs, and any dine-in establishments [were] allowed, but restricted to no more than 50% of the rated occupancy maximum at a time." Filing 70-5 at 4. "All elementary and secondary schools – public, private, and parochial – [were] ordered to cease all in-

person instruction." Filing 70-5 at 5. "Religious services, including weddings or funerals, [were] allowed but . . . limited to the ceremony or service only. During religious ceremonies and services, party(s) [had to] maintain a minimum of 6 feet of separation." Filing 70-5 at 5. "[D]aycare/childcare services [could] not exceed the lessor of the current license limit or 15 children per room/space." Filing 70-5 at 6. "All gentleman's clubs, bottle clubs, indoor movie theatres, and indoor theatres, [were] ordered to cease providing services to the public." Filing 70-5 at 5.

**B. Enforcement Actions Against Defendants**

Plaintiffs allege that on March 25, 2020, defendant Martinez entered Club Omaha without a warrant or advance permission and told Plaintiffs there was a 10-person congregation limitation including staff. Filing 68 at 3-4. Plaintiffs allege that shortly after officer Martinez provided this in-person warning, the City of Omaha planned a "vice operation" against them. Filing 68 at 4. Specifically, Plaintiffs allege that on April 3, 2020, OPD officers, including defendants Harper, Buresh, Menning, Perkins, Cotton, Haley, and Sundermeier, entered Club Omaha and Club 120 without a warrant or advance permission at 9:10 p.m. and issued a citation. Filing 68 at 4. These defendants gained entry to Club Omaha by executing club membership applications. Filing 68 at 4. Further, an undercover officer "requested that Club Omaha's dancer come within six feet" of the officer when the officer requested a dance. Filing 68 at 4. After the dancer came within six feet of the officer at the officer's request, the officer then issued Club Omaha a ticket for violating the March 20 DHM. Filing 68 at 4.

Plaintiffs claim the April 3, 2020 operation resulting in a ticket being issued to Club Omaha for violation of the March 20 DHM was detailed in a "perjured police report." Filing 68 at 5. Defendants Harper and Buresh's statement in the report is as follows: "The club was operating in

violation of the public health order declared [sic] by Douglas County which stated that if even a gathering of less than 10 person [sic], there must be a minimum social distance of six feet by attendees." Filing 68 at 5 (alteration added). A supplement was added to the police report, wherein defendants Menning and Hening[7] [sic] reported "the dancer and the patron were not abiding by the social distancing 6 foot rule that the owner [Harrington] had previously been advised he and his employees needed to comply with." Filing 68 at 5. Plaintiffs allege Harrington did not receive a warning prior to the citation but all other businesses in the City of Omaha and Douglas County suspected of DHM violations were first given a warning before the police issued the businesses citations. Filing 68 at 5-6.

On April 10, 2020, Jake Ritonya, an OPD Lieutenant,[8] wrote an email to Plaintiffs stating:

> [A]s a courtesy, I am emailing you the updated State of Nebraska Directed Health Measure which went into effect April 10, 2020. Specifically Page 6, Section III. Paragraph 1 closes all gentleman's clubs and bottle clubs until April 30th."[9]

Filing 68 at 6. Plaintiffs allege this was their first notification that they were required to close. Filing 68 at 6.

On May 12, 2020, Plaintiff sent an email to defendants Schmaderer, Dunning, Stothert, the Omaha City Council, and non-defendants Ritony, Desler,[10] and Kuhse "requesting clarification of

---

[7] Based on context, Court assumes Plaintiffs are referring to Defendant Henige.

[8] Plaintiffs refer to Lt. Ritonya as a defendant on page 6 and 7, but Ritonya is not a defendant listed in the case caption, and is not described in the Parties subsection of the Amended Complaint. Filing 68 at 19-21. There is no indication that he was served a summons. Lt. Ritonya has not been properly named as a defendant in this lawsuit, and the Court will not construe the Complaint against him. See *Williams v. Bradshaw*, 459 F.3d 846, 849 (8th Cir. 2006) ("Under the Federal Rules of Civil Procedure, the title of the action in a complaint 'shall include the names of all the parties.' Fed.R.Civ.P. 10(a). . . . While a caption is not determinative as to who is a party to a suit, *Greenwood v. Ross*, 778 F.2d 448, 452 (8th Cir.1985), we think that it is entitled to considerable weight when determining who the plaintiffs to a suit are since plaintiffs draft complaints.")

[9] The Court was not provided a DHM, issued by Douglas County or Nebraska DHHS, that was effective as of April 10, 2020, that closed all gentleman's clubs and bottle clubs until April 30, 2020.

[10] Plaintiffs seem to imply that Desler and Kuhse are defendants by the wording of the sentence, but neither are listed in the case caption or party description. The Court is not construing the Complaint against Desler or Kuhse. *See Williams*, 459 F.3d at 849.

the May DHM."[11] Filing 68 at 7. Plaintiffs allege they only received a response from Sheriff Dunning, who Plaintiffs allege responded, "[y]ou are not playing with a full deck!" Filing 68 at 7.

*1. Club Omaha*

According to the Amended Complaint, on May 15, 2020, after 8:00 p.m., approximately six OPD officers including unspecified defendants, entered Club Omaha property without a warrant and attempted to enter the building, pounding on the front door repeatedly. Filing 68 at 8. On May 27, 2020, at approximately 10:00 p.m., law enforcement officers entered Club Omaha and Club 120 pursuant to a day warrant and engaged in a search for approximately 30 minutes with several armed police officers. Filing 68 at 9.

Defendants enforced the May 4 DHHS DHM that specifically closed four types of businesses: bars, strip clubs, bottle clubs, and movie theaters. Filing 68 at 10; Filing 70-5 at 5. Plaintiffs allege the provision regarding strip clubs and bottle clubs applied only to three businesses, plaintiff Club Omaha, American Dream, and Kandi's, which went out of business. Filing 68 at 10, 18. Plaintiffs allege that the DHM impositions were not based on "flattening the curve" or limiting the spread of the coronavirus.[12] Filing 68 at 10. Instead, they allege Defendants "are highly religious Christians who value the Bible above the Constitution" and enforce different standards based upon their personal likes and dislikes of different businesses, industries, and activities. Filing 68 at 9-10. Plaintiffs allege that, as a result of the closures implemented by Defendants, Club Omaha was not able to operate from March through May of 2020 and has only been allowed to operate "in some capacity" since June 1, 2020. Filing 68 at 10.

---

[11] Plaintiffs do not specify which DHM was being clarified. Based on the heading "Unconstitutional May 2020 DHM" and references to May 4, 2020, and Governor Ricketts, it appears to be the May 4 DHHS DHM being clarified in the May 12 email.

[12] Plaintiffs do not specify which DHM was their basis for this allegation, but it appears based on the context of the allegation, it is the May 4 DHHS DHM restrictions.

*2. Club 120*

Plaintiffs allege that Club 120 has not been allowed to operate during its entire tenancy which began November 1, 2019. Filing 68 at 10. Club 120 obtained a lease for the property at 2615 S. 120th Street, Omaha, NE 68144 in October 2019. Filing 68 at 11. The City of Omaha required Club 120 to make renovations costing over $150,000. Filing 68 at 11. The renovations included plumbing and kitchen upgrades, as well as the removal of a wall constructed by the prior tenant. Filing 68 at 11. Club 120 had the opportunity to obtain a liquor license on March 17, 2020, approximately one year after applying for the license. Filing 68 at 11. The following day, all bars were closed in Omaha for approximately three months, with dance floors being closed eight months as of the filing of the Amended Complaint. Filing 68 at 11.

Shortly after being approved for a liquor license on March 17, 2020, Club 120 decided to decline the liquor license because it was "useless" given the closure of all bars. Filing 68 at 12. Instead, Plaintiffs applied for a bottle-club license. Filing 68 at 11-12. At that time, the Chairman of the Nebraska Liquor Control Commission ("NLCC") told Plaintiffs that a bottle-club license was a lateral change of liquor license and the application should be approved without a hearing. Filing 68 at 12. On July 7, 2020, plaintiffs Harrington and Club 120 received notice via email of a public hearing being held regarding the club's application for a bottle-club license on Tuesday, July 28, 2020 at 2:00 p.m. and the hearing's location. Filing 68 at 12. At this meeting, Plaintiffs allege Melton accused Plaintiffs of operating an illegal business. Filing 68 at 12. Prior to the completion of the hearing, Melton stated, "I'm not voting for this" and allegedly brought up an unrelated Fair Labor Standards Act ("FLSA") civil lawsuit against Plaintiffs as grounds for denying the application. Filing 68 at 12. Harrington was present for the hearing. Filing 68 at 12. The hearing was adjourned without a new hearing date. Filing 68 at 12. Certain defendants then

"demanded a number of documents" following the July 28, 2020, hearing. Filing 68 at 13. Harrington forwarded the requested information and complied with a follow up request sent by Elizabeth Butler for additional information. Filing 68 at 13.

The City of Omaha and the Omaha City Council members postponed consideration of the bottle-club license from July 28, 2020, to August 11, 2020. Filing 68 at 13. Plaintiffs claim they received no notice of the change. Filing 68 at 13. The agenda for the Omaha City Council on July 28, 2020, was exceptionally lengthy, and Harrington left after discussion of Club Omaha's application. Filing 68 at 14. On August 12, 2020, after Plaintiffs contend they discovered that the application hearing was held the day prior, Plaintiffs requested via email that the City of Omaha reschedule the hearing. Filing 68 at 13. Defendant Butler responded to the request stating,

> Infinity's Class M Liquor License application was continued from the July 28, 2020 Omaha City Council to the August 11, 2020 meeting. I have attached the Journal from that meeting that includes this motion. At the August 11th meeting, the Omaha City Council voted 7-0 to recommend denial of your application. We will be sending the recommendation to the [NLCC] in the next couple of days.

Filing 68 at 13-14. Plaintiffs allege Defendants the City of Omaha, Melton, Jerram, Festersen, Gray, Palermo, Pahls, Harding, and Stothert recommended denial of Plaintiffs' bottle club application based on three factors: failure to appear at adjourned hearing, receipt of two fifth degree misdemeanor violations of directed health measures, and for allegedly operating an unlicensed bottle club at Club Omaha since July 2019. Filing 68 at 15-16. Plaintiffs allege the NLCC's only reason for denying Club 120's bottle club liquor license was the recommendation for denial by the City Council and the City of Omaha. Filing 68 at 16.

Plaintiffs allege that the City of Omaha, in conjunction with Fire Captain Eivins, Fire Inspector Urkoski, and Planning Department employee Hawthorne, required Club 120 to obtain a dance permit to allow dancing. Filing 68 at 16. Plaintiffs complain this was inappropriate because

the prior tenant of the same space who conducted a similar business never applied for or received a dance permit in seven years at that location. Filing 68 at 16. Plaintiffs also claim multiple clubs, bars and lounges in Omaha allow dancing without having a dance permit. Filing 68 at 16. Plaintiffs allege Defendants did not issue a dance permit to Club 120 for fourteen months. Filing 68 at 16.

Plaintiffs filed the current action on October 11, 2020. Filing 2. The defendants filed motions to dismiss for failure to state a claim, Filing 62; Filing 65, which were denied as moot when Plaintiffs filed their Amended Complaint on January 3, 2021. Filing 68. One defendant was added to the case, John Henige, but Henige was not served, and City Defendants' Motion to Dismiss does not mention Henige as a defendant. Filing 68, 69, 73. The Court issued an Order to Show Cause, Filing 82, as Henige was not properly served. Plaintiffs requested summons for Henige, Filing 85, and City Defendants filed an unopposed motion to include Henige in their Motion to Dismiss, Filing 73. Filing 86.

## III.    STANDARD OF REVIEW

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). In order to satisfy this requirement, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Corrado v. Life Inv'rs Ins. Co. of Am.*, 804 F.3d 915, 917 (8th Cir. 2015) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Barton v. Taber*, 820 F.3d 958, 964 (8th Cir. 2016) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

In analyzing a motion to dismiss, the Court must "accept as true all factual allegations in the complaint and draw all reasonable inferences in favor of the nonmoving party, but [is] not

bound to accept as true '[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements' or legal conclusions couched as factual allegations." *McDonough v. Anoka Cnty.*, 799 F.3d 931, 945 (8th Cir. 2015) (citations omitted) (quoting *Iqbal*, 556 U.S. at 678).

"If, on a motion under Rule 12(b)(6) . . . matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56." Fed. R. Civ. Pro. 12(d). However, the motion to dismiss is not automatically converted to a motion for summary judgment just because a party submits additional matters in support or opposition to the motion. *Gorog v. Best Buy Co., Inc.*, 760 F.3d. 787, 791 (8th Cir. 2014). The motion should not be converted to summary judgment if the matters submitted were excluded by the Court or if the matters were "necessarily embraced by the complaint." *Id.*; *see also Ashford*, 880 F.3d at 992 ("When considering a Rule 12(b)(6) motion, the court generally must ignore materials outside the pleadings, but it may consider some materials that are part of the public record or do not contradict the complaint, as well as materials that are necessarily embraced by the pleadings.") (quoting *Smithrud*, 746 F.3d at 395)). "The court has complete discretion to determine whether or not to accept any material beyond the pleadings that is offered in conjunction with a Rule 12(b)(6) motion." *Stahl v. U.S. Dept. of Agric.*, 327 F.3d 697, 701 (8th Cir. 2003) (internal citations removed).

## IV. ANALYSIS

Plaintiffs assert ten causes of action which are as follows: Fourth Amendment illegal searches and seizures; First Amendment violations of free speech, expression, and assembly; Fourteenth Amendment equal protection violations; Title VI Civil Rights Act violations; due process violations; establishment clause violations; 42 U.S.C. § 1985 violations; promissory

estoppel; and breach of contract. S*ee* [Filing 68](#). Ultimately, the Court dismisses the Amended Complaint in its entirety. The Court begins by addressing whether claim and issue preclusion precludes any claims against the Defendants. The Court will then address whether qualified immunity applies to the remaining claims against Defendants, followed by a review of each individual cause of action.

### A. Claim and Issue Preclusion

City Defendants assert claim and issue preclusion bar the relitigation of Plaintiff's § 1985, breach of contract, and promissory estoppel claims. [Filing 74 at 8-10](#). Specifically, City Defendants argue that Plaintiffs already filed suit on the matters in *Harrington v. Strong*, 363 F. Supp. 3d 984 (D. Neb. 2019) ("*Harrington* (2019)"). [Filing 74 at 8-10](#). In response to these arguments, Plaintiffs contend that the presently challenged causes of action involve events that occurred after those adjudicated in *Harrington* (2019). [Filing 78 at 8](#). Plaintiffs provide no other explanation for why claim and issue preclusion do not apply.

As described below, the Court finds Plaintiffs' promissory estoppel cause of action and § 1985 claim based upon the 2018 protests are barred by both claim and issue preclusion and therefore dismisses them with prejudice. However, Plaintiffs' breach of contract claim is not precluded.

"Under the doctrine of claim preclusion, a final judgment forecloses 'successive litigation of the very same claim, whether or not relitigation of the claim raises the same issues as the earlier suit.'" *Taylor v. Sturgell*, 553 U.S. 880, 892 (2008) (quoting *New Hampshire v. Maine*, 532 U.S. 742, 748 (2001)). The doctrine of claim preclusion applies when "(1) the first suit resulted in a final judgment on the merits; (2) the first suit was based on proper jurisdiction; (3) both suits involve the same parties (or those in privity with them); and (4) both suits are based upon the same

claims or causes of action." *Elbert v. Carter*, 903 F.3d 779, 782 (8th Cir. 2018) (quoting *Costner v. URS Consultants, Inc.*, 153 F.3d 667, 673 (8th Cir. 1998)). "[W]hether two claims are the same for [claim preclusion] purposes depends on whether the claims arise out of the same nucleus of operative fact or are based upon the same factual predicate." *Id.* (quoting *Murphy v. Jones*, 877 F.2d 682, 684-85 (8th Cir. 1989)) (alteration added). "Under the doctrine of [claim preclusion], 'a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action.'" *Id.* (quoting *Allen v. McCurry*, 449 U.S. 90, 94 (1980)) (alteration added).

1. *Prior Litigation Harrington (2019)*

In *Harrington* (2019), the plaintiffs were Shane Harrington, H&S Club Omaha, Inc., Midwest Girls Club, and Meltech, Inc., and they filed suit against the City of Omaha, John Doe Building Inspectors, John Doe Omaha Police Officers, Jean Stothert, Todd Schmaderer, Aimee Melton, Chris Jerram, and assorted other state and municipal officials alleging promissory estoppel and § 1985 claims. 363 F. Supp. 3d at 991. Part of the factual basis for the plaintiffs' claims was an email exchange between plaintiffs and city attorneys that "gave plaintiffs consent to open Club Omaha." *Id.* Specifically on October 31, 2016, Kratz and Acosta Trejo responded to questions regarding zoning restrictions and licensing, by stating "there are no zoning regulations in Omaha in regards to 'sexually oriented business'." *Id.* at 1011. Regarding promissory estoppel, the court found that "plaintiffs failed to allege the existence of a promise, the enforcement of which is necessary to avoid an injustice." *Id.* The promissory estoppel claim was dismissed without prejudice. *Id.*

Additionally, *Harrington* (2019), addressed claims that Harrington and four women engaged in a demonstration at 72nd and Dodge Streets, protesting certain ordinances pertaining to

bottle clubs and live nude dancing on July 21, 2018. 363 F. Supp. 3d at 992. OPD officers arrived, and the demonstrators stopped protesting and went back to Club Omaha. *Id.* The OPD officers followed them back to Club Omaha. *Id.* at 993. The § 1985 claim consisted of "general allegations of a widespread conspiracy," and was dismissed against the defendants for failure to state a claim. *Id.* at 1000, 1003.

Plaintiffs filed an appeal on March 12, 2019, but Plaintiffs dismissed the appeal on October 1, 2019. Judgment, *Harrington v. Susan Strong*, No. 8:18-cv-00383-LSC (D. Neb. Oct. 1, 2019), ECF No. 71.

The preclusive effect of the prior case is at issue with regard to Plaintiffs' § 1985, breach of contract,[13] and promissory estoppel claims. The Court will address claim preclusion first before turning to issue preclusion.

### 2. *Claim and Issue Preclusion under Harrington (2019)*

The first element of claim preclusion is that "the first suit resulted in a final judgment on the merits." *Elbert v. Carter*, 903 F.3d 779, 782 (8th Cir. 2018) (quoting *Costner v. URS Consultants, Inc.*, 153 F.3d 667, 673 (8th Cir. 1998)). "[I]t is well-established that a Rule 12(b)(6) dismissal is a 'judgment on the merits' for [claim preclusion] purposes unless the plaintiff is granted leave to amend or the dismissal is reversed on appeal." *United States v. Maull*, 855 F.2d 514, 516 n.3 (8th Cir. 1988) (first alteration in original, second alteration added) (citing *Federated Dep't Stores v. Moitie*, 452 U.S. 394, 399 n.3 (1981); *Carter v. Money Tree Co.*, 532 F.2d 113, 115 (8th Cir.), cert. denied, 426 U.S. 925 (1976)). In *Harrington* (2019), the promissory estoppel and

---

[13] The current breach of contract claim alleges that a contract or settlement agreement was reached regarding three pending cases in the court systems. Filing 68 at 36-37. It appears the breach of contract claim is based upon different facts and occurred after the events alleged in *Harrington* (2019). Thus, neither form of preclusion applies to the breach of contract claim, and the Court will further address preclusion only as applied to Plaintiffs' promissory estoppel and § 1985 claims.

§ 1985 conspiracy causes of action were dismissed without prejudice for failure to state a claim. 363 F. Supp. 3d at 1011. The plaintiffs did not request leave to amend their amended complaint, nor was the dismissal reversed on appeal. The first element of claim preclusion is met for Plaintiffs' promissory estoppel and 42 U.S.C. § 1985 claims.

The second element is that the "first suit was based on proper jurisdiction." *Elbert*, 903 F.3d at 782. Neither party alleged improper jurisdiction in *Harrington (2019)*. *Harrington*, 363 F. Supp. 3d 984. The court had jurisdiction over the § 1985 cause of action under federal question jurisdiction, 28 U.S.C. § 1331, and over the promissory estoppel cause of action under supplemental jurisdiction, 28 U.S.C. § 1367. The second element of claim preclusion is met for Plaintiffs' promissory estoppel and 42 U.S.C. § 1985 claims.

The third element is that both suits "involve the same parties (or those in privity with them)." *Elbert*, 903 F.3d at 782. While Club 120 was not a plaintiff in the first action, no facts involving plaintiff Club 120 are alleged under the current case's promissory estoppel action or the 2018 protest portion of the § 1985 conspiracy. *See* Filing 68 at 31-35. Thus, plaintiff Club 120 does not state a claim for promissory estoppel or § 1985 conspiracy in the current action. However, in *Harrington* (2019), Shane Harrington and Club Omaha were plaintiffs, and filed suit against the City of Omaha, and City Council members Chris Jerram and Aimee Melton, among other defendants. 363 F. Supp. 3d at 991. Thus, the same parties (or ones in privity with them) were involved in both actions, and the third element of claim preclusion is met for Plaintiffs' promissory estoppel and 42 U.S.C. § 1985 claims.

The fourth element for claim preclusion is "both suits are based upon the same claims or causes of action." *Elbert*, 903 F.3d at 782. "[W]hether two claims are the same for [claim preclusion] purposes depends on whether the claims arise out of the same nucleus of operative fact

or are based upon the same factual predicate." *Elbert*, 903 F.3d at 782 (quoting *Murphy v. Jones*, 877 F.2d 682, 684-85 (8th Cir. 1989)) (alteration added). Both the previous and the current promissory estoppel causes of action are based on the same email on October 31, 2016. *Compare Harrington*, 363 F. Supp. 3d at 991, 1011, *with* Filing 68 at 33-35. The Court determines that both promissory estoppel claims arise out of the same nucleus of operative facts. Additionally, Plaintiffs alleged a conspiracy relating to the protest on July 21, 2018, in both cases. Compare *Harrington*, 363 F. Supp. 3d at 992-93, 1003 *with* Filing 68 at 32, 33.

"Issue preclusion, in contrast [to claim preclusion], bars 'successive litigation of an issue of fact or law actually litigated and resolved in a valid court determination essential to the prior judgment,' even if the issue recurs in the context of a different claim." *Taylor*, 553 U.S. at 892 (quoting *New Hampshire*, 532 U.S. at 748–749). "By 'preclud[ing] parties from contesting matters that they have had a full and fair opportunity to litigate,' these two doctrines protect against 'the expense and vexation attending multiple lawsuits, conserv[e] judicial resources, and foste[r] reliance on judicial action by minimizing the possibility of inconsistent decisions.'" *Id.* (quoting *Montana v. United States*, 440 U.S. 147, 153–154 (1979)) (alteration in original). *See also Sandy Lake Band of Miss. Chippewa v. United States*, 714 F.3d 1098, 1102 (8th Cir. 2013) (quoting *Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 77 n.1 (1984) ("Issue preclusion refers to the effect of a judgment in foreclosing relitigation of a matter that has been litigated and decided.")). Issue preclusion has five elements:

> (1) the party sought to be precluded in the second suit must have been a party, or in privity with a party, to the original lawsuit; (2) the issue sought to be precluded must be the same as the issue involved in the prior action; (3) the issue sought to be precluded must have been actually litigated in the prior action; (4) the issue sought to be precluded must have been determined by a valid and final judgment; and (5) the determination in the prior action must have been essential to the prior judgment.

*Sandy Lake*, 714 F.3d at 1102–03 (quoting *Robinette v. Jones*, 476 F.3d 585, 589 (8th Cir. 2007)).

The five elements of issue preclusion are met by *Harrington* (2019) for Plaintiffs' promissory estoppel and 42 U.S.C. § 1985 claims. Shane Harrington and Club Omaha were both plaintiffs in the initial lawsuit. *Harrington*, 363 F. Supp. 3d at 991. Promissory estoppel and a § 1985 conspiracy were asserted in the first action. *Id.* at 1010-11, 1003. The issues of promissory estoppel and conspiracy were actually litigated, as each was pled in the complaint and dismissed on the motion of the defendants. *Id.* at 1012. An order granting a motion to dismiss is a valid and final judgment. *Magee v. Hamline Univ.*, 1 F. Supp. 3d 967, 975 (D. Minn. 2014), aff'd in part, 775 F.3d 1057 (8th Cir. 2015) ("[I]t is well-established that a Rule 12(b)(6) dismissal is a 'judgment on the merits' for res judicata purposes unless the plaintiff is granted leave to amend or the dismissal is reversed on appeal.") (citing *Maull*, 855 F.2d at 516 n.3); *see also Hillary v. Trans World Airlines, Inc.*, 123 F.3d 1041, 1044 n.2 (8th Cir. 1997). The determinations that Plaintiffs failed to state a claim for promissory estoppel and conspiracy were essential in dismissing the case because the claims could not have been dismissed otherwise. *See B&B Hardware, Inc. v. Hargis Indus., Inc.*, 569 F.3d 383, 389 (8th Cir. 2009) (The issue was not "essential to the prior judgment" because the question of likelihood of confusion and actual confusion were not decided by the jury, and the jury decision was based instead on whether the term was descriptive and had not acquired a secondary meaning.)

Accordingly, all of the claim and issue preclusion elements are met for the promissory estoppel, and therefore, Plaintiffs are barred from asserting promissory estoppel in the current action. Additionally, to the extent that the current action's § 1985 claim is based on the July 21, 2018, protest, it is barred by claim and issue preclusion. Thus, these claims are dismissed with prejudice.

### B. Non-Entity Defendants' Official and Individual Capacities

Plaintiffs have sued non-entity defendants Buresh, Butler, Cotton, Dunning, Eivins, Festersen, Gray, Haley, Harding, Harper, Hawthorne, Henige, Jerram, Lawson, Martinez, Melton, Menning, Pahls, Palermo, Perkins, Pour, Schmaderer, Stothert, Sundermeier, and Urkoski in both their individual and official capacities. *See* Filing 68 at 1. Pour and Dunning, both county defendants, assert they are entitled to qualified immunity because Plaintiffs fail to allege sufficient facts to demonstrate that either official took any action that would violate Plaintiffs' constitutional rights. Filing 71 at 22. The non-entity city defendants listed above argue all causes against them should be dismissed because Plaintiffs fail to provide any specific allegations against them, and any claims against them should be dismissed in both their individual and official capacities. Filing 74 at 10-12. In response to Defendants' argument that qualified immunity should apply to bar Plaintiffs' claims, Plaintiffs responded, "that is the whole point of this lawsuit, to determine whether or not their conduct consisted of such violations, which Plaintiffs claim it did." Filing 78 at 8. The Court will first address the redundancy of including the non-entity defendants in their official capacities before analyzing qualified immunity as to non-entities' individual capacities.

1. *Non-Entity Defendants in Their Official Capacities*

A suit against a government officer in his official capacity is functionally equivalent to a suit against the employing governmental entity. *Veatch v. Bartels Lutheran Home*, 627 F.3d 1254, 1257 (8th Cir. 2010) (internal citation omitted) (district court dismissed the claim against official in his official capacity as redundant of the claim against the municipality, affirmed on appeal). The official capacity of each non-entity defendant is as an official for either Douglas County or the City of Omaha. Because both Douglas County and the City of Omaha are municipalities and are named in the suit, the inclusion of claims against the individuals in their official capacities is

redundant. Thus, the Court dismisses with prejudice all causes of action against non-entity defendants in their official capacities as redundant.

###### 2.  *Non-Entity Defendants in Their Individual Capacities*

A suit against a government official in his individual capacity "seek[s] to impose personal liability upon a government official for actions he takes under color of state law." *Kentucky v. Graham*, 473 U.S. 159, 165 (1985). The plaintiff must allege sufficient facts supporting the individual defendant's personal involvement or responsibility for the constitutional violation. *Martin v. Sargent*, 780 F.2d 1334, 1337-39 (8th Cir. 1985) (Prisoner litigation named several prison officials in individual capacities. To form a cognizable § 1983 claim against the individuals, plaintiff must allege the individual was personally involved or had direct responsibility for incidents that injured plaintiff. Actions attributed to individual defendant had to amount to a constitutional violation.) To establish liability, the plaintiff must show that the official, acting under color of state law, caused a deprivation of a federal right. *Graham*, 473 U.S. at 166.

Defendants may be entitled to qualified immunity for those claims brought against them in their individual capacities. *McRaven v. Sanders*, 577 F.3d 974, 980 (8th Cir. 2009). "Qualified immunity protects a government official from liability in a section 1983 action unless the official's conduct violated a clearly established constitutional or statutory right of which a reasonable person would have known." *Henderson v. Munn*, 439 F.3d 497, 501 (8th Cir. 2006) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). "To overcome the defense of qualified immunity, a plaintiff must show: (1) the facts, viewed in the light most favorable to the plaintiff, demonstrate the deprivation of a constitutional or statutory right; and (2) the right was clearly established at the time of the deprivation." *Howard v. Kan. City Police Dep't.*, 570 F.3d 984, 988 (8th Cir. 2009).

The court may first address either prong. *Id.* (citing *Pearson v. Callahan*, 555 U.S. 223, 236 (2009)).

For each non-entity defendant, the Court will determine whether qualified immunity is granted based on whether the alleged facts demonstrate the defendant deprived Plaintiffs of a constitutional or statutory right or whether the constitutional right was clearly established at the time of deprivation.

Defendants Buresh, Harper, Menning, Perkins, Cotton, Haley, and Sundermeier are OPD officers involved in the undercover operation on April 3, 2020. Filing 68 at 4-5 (OPD officers conducted an undercover "vice operation" where the officers gained entry to Club Omaha by completing membership applications. An officer issued citations after a dancer came within six feet of undercover officer). "An undercover police officer's entry by consent, though obtained by deception, is not prohibited by the Fourth Amendment." *United States v. Shigemura*, 682 F.2d 699, 706 (8th Cir. 1982) (citing *Lewis v. United States*, 385 U.S. 206, 210-12 (1966)). *See* discussion *infra* Section IV.C.1. "It is well settled that the fact that officers or employees of the Government merely afford opportunities or facilities for the commission of the offense does not defeat the prosecution. Artifice and stratagem may be employed to catch those engaged in criminal enterprises." *Jacobson v. United States*, 503 U.S. 540, 548 (1992). Plaintiffs failed to allege sufficient facts to state a claim for Fourth Amendment violation against any individual defendant, including defendants Buresh, Harper, Menning, Perkins, Cotton, Haley, and Sundermeier, and they are all entitled to qualified immunity in their individual capacities.

Defendant Butler is the Omaha City Clerk. Plaintiffs allege Butler sent an email to Plaintiffs requesting the full email chain from 2019, Filing 68 at 13. In response to Plaintiffs' request to reschedule the hearing on Club 120's liquor license application, Butler noted that

"Infinity's Class M Liquor License application was continued from the July 28, 2020 Omaha City Council to the August 11, 2020 meeting." Filing 68 at 13-14. The Amended Complaint also alleges Butler did not inform Plaintiffs of the date and time of the adjourned hearing on August 11, 2020. Filing 68 at 14.

 As discussed *infra* in Section IV.C.5, Plaintiffs failed to allege sufficient facts to plead a plausible due process violation, therefore, Plaintiffs failed to allege sufficient facts that Butler individually violated a clearly established constitutional right by not providing notice of the postponed hearing. Butler is entitled to qualified immunity in her individual capacity.

At the time of the filing of this lawsuit, defendant Dunning was the Douglas County Sheriff. Filing 68 at 20. The sole action that Plaintiffs attribute to Dunning is that he replied to an email regarding DHMs with the response, "[y]ou are not operating with a full deck." Filing 68 at 29. "Damages for defamation are not recoverable under § 1983 because a defamed person has not been deprived of any right, privilege or immunity secured to him by the Federal Constitution or laws of the United States." *Ellingburg v. Lucas*, 518 F.2d 1196, 1197 (8th Cir. 1975) (per curiam). A defamation claim, separate from a § 1983 claim, "has four elements: (1) a false and defamatory statement concerning the claimant, (2) an unprivileged publication to a third party, (3) fault amounting to at least negligence on the part of the publisher, and (4) either actionability of the statement irrespective of special harm or the existence of special harm caused by the publication." *JB & Assocs., Inc. v. Neb. Cancer Coal.*, 932 N.W.2d 71, 78 (Neb. 2019). If the Plaintiffs are alleging a defamation claim against Dunning, Plaintiffs failed to allege sufficient facts to state a plausible defamation claim and the claim is dismissed. Plaintiffs have failed to allege Dunning violated a clearly established constitutional right by allegedly insulting or defaming Plaintiffs. Therefore, Dunning is entitled to qualified immunity in his individual capacity.

Plaintiffs allege defendants Eivins (Captain of the Omaha Fire Department), Hawthorne (Omaha City Planning Department employee), and Urkoski (Omaha Fire Department inspector) required them to obtain a dance permit for Club 120, a nightclub, and thereby denied them equal protection. Filing 68 at 26. Plaintiffs failed to allege sufficient facts that show Eivins, Hawthorne, and Urkoski were personally involved in a constitutional violation; Plaintiffs only allege that the defendants enforced a city permitting process. *See Hayes v. Faulkner Cnty., Ark.*, 388 F.3d 669, 675 (8th Cir. 2004) (Plaintiff must prove the official's conduct deprived him of constitutional rights.) Eivins, Hawthorne, and Urkoski are entitled to qualified immunity in their individual capacities.

Plaintiffs allege City Council members Festersen, Gray, Harding, Jerram, Palermo, Melton, and former council member Pahls violated their constitutional rights. Filing 68 at 24, 25, 30, 32, 33, 36. However, Plaintiffs fail to allege sufficient facts against Festersen, Gray, Harding, Jerram, Pahls, Palermo, and Melton to show any individual member of the city council was personally involved or responsible for a constitutional violation. *See Martin*, 780 F.2d at 1337-39 (requiring sufficient facts supporting an individual defendant's personal involvement or responsibility for a constitutional violation). Plaintiffs allege Melton referenced an FLSA lawsuit and told the City Council she was voting against the liquor license, but Plaintiffs do not allege sufficient facts to state a defamation claim. Additionally, damages are not allowed for defamation under § 1983. *Ellingburg*, 518 F.2d at 1197. Thus, Festersen, Gray, Harding, Jerram, Pahls, Palermo, and Melton are each entitled to qualified immunity in their individual capacities.

Plaintiffs allege that Pour, as the Douglas County Health Director, issued the March 18 DHM and the March 20 DHM. Filing 68 at 2-3. Additionally, Plaintiffs allege that Pour did not issue a decision on its DHM hearing until after April 30, 2020, and on multiple occasions, Pour

received emails from Plaintiffs and did not respond. Filing 68 at 3. Plaintiffs include Pour in many statements that are legal conclusions, and the Court is not required to accept those legal conclusions as true.[14] The Plaintiffs appear to incorrectly attribute the closures directed by the May 4 DHHS DHM to Pour and the March 20 DHM. The March 20 DHM placed limitations on a substantial amount of businesses and meetings, including schools, gymnasiums, salons, fitness centers, stadiums, arenas, theaters, libraries, weddings, funerals, and concerts. Filing 70-3 at 2. Additionally, the March 20 DHM limited liquor and beer sales. Filing 70-3 at 2. The March 20 DHM did not apply to courts of law, medical providers, critical operations, public transportation, stores, or malls. Filing 70-3 at 2. Pour issued the March 20 DHM based on the findings that DHMs "exist to effectively prevent, limit or slow the spread of" COVID-19, "the disease presents a risk of death to any person," and there was a need to prohibit "all public gatherings within the jurisdiction of the Douglas County Health Department." Filing 70-3 at 1-2. Plaintiffs' conclusory allegations that Pour and the March 20 DHM arbitrarily singled out businesses are not supported by the facts necessarily embraced by the Complaint. Plaintiffs failed to allege sufficient facts that show Pour violated their constitutional rights. Even if the Plaintiffs had alleged sufficient facts, Pour was acting in her capacity as health director during a global pandemic. Pour was not on notice that she was violating a clearly established right of Plaintiffs by issuing and enforcing a DHM that brought Douglas County in line with the Nebraska DHHS DHM. *See Sisney v. Reisch*, 674 F.3d 839, 847 (8th Cir. 2012) (explaining that officials receive qualified immunity if they lacked "fair

---

[14] "This order drafted and issued by Defendant Adi Pour and enforced by Defendants Douglas County, the City of Omaha, and the individual officers named herein, was unconstitutional because it arbitrarily singled out certain businesses for closure and restrictions that were not imposed on other similar businesses without any medical or scientific basis and because it is vague, overbroad, arbitrary and capricious." Filing 68 at 3. "Defendants Douglas County and Dr. Pour failed to provide Plaintiffs a prompt hearing as provided in the DHM and its decision wasn't issued until after the DHM expired on April 30, 2020, at which time the entire point was moot." Filing 68 at 3.

notice" that their actions were unlawful). Pour is entitled to qualified immunity in her individual capacity.

Plaintiffs allege they sent Schmaderer, the chief of the Omaha Police Department, an e-mail on May 12, 2020, but Schmaderer did not respond. Filing 68 at 7. Plaintiffs fail to allege sufficient facts against Schmaderer to show he was personally involved or responsible for any constitutional violation. *See Martin*, 780 F.2d at 1337-39 (requiring sufficient facts supporting an individual defendant's personal involvement or responsibility for a constitutional violation). Thus, Schmaderer is entitled to qualified immunity in his individual capacity.

Plaintiffs allege they sent Omaha Mayor Jean Stothert emails but she did not respond. Filing 68 at 2, 6, 7, 8, 9. Additionally, Plaintiffs made several conclusory statements regarding the City of Omaha which did not contain specific allegations against Stothert.[15] Plaintiffs fail to allege sufficient facts against Stothert to show she was personally involved or responsible for a constitutional violation. Stothert is entitled to qualified immunity in her individual capacity.

Plaintiffs do not mention Lawson in any capacity outside of the case caption or parties. Lawson is entitled to qualified immunity in his individual capacity. *See Martin*, 780 F.2d at 1337-39 (requiring sufficient facts supporting an individual defendant's personal involvement or responsibility for a constitutional violation).

Plaintiffs allege Martinez entered their property and told Plaintiffs of a 10-person congregation limitation including staff. Filing 68 at 3-4. Similar to the OPD officers' actions examined earlier, Plaintiffs do not allege sufficient facts to indicate a constitutional violation occurred. Martinez is entitled to qualified immunity in his individual capacity.

---

[15] "Stothert was the proximate cause of the NLCC's denial of Plaintiff's bottle club liquor license application." Filing 68 at 15. "Stothert [and other defendants] denied Plaintiffs equal protection." Filing 68 at 25. "Stothert [and other defendants] conspired to injure . . . Plaintiffs." Filing 68 at 32.

Plaintiffs allege Defendant Hening (sic) issued a supplemental police report stating "the dancer and the patron were not abiding by the social distancing 6 foot rule that the owner had previously been advised he and his employees needed to comply with." Filing 68 at 5. The Court presumes that Plaintiffs are referring to Henige as there is no defendant Hening listed in parties or the caption. Plaintiffs fail to allege sufficient facts against Henige showing he was personally involved or responsible for any constitutional violation. *See Martin*, 780 F.2d at 1337-39 (requiring sufficient facts supporting an individual defendant's personal involvement or responsibility for a constitutional violation). Thus, Henige is entitled to qualified immunity in his individual capacity.

All non-entity defendants in their individual capacities are entitled to qualified immunity. Accordingly, the Court dismisses without prejudice all causes of action as they relate to the non-entity defendants in their individual capacities.

### C. Individual Causes of Action

Having addressed qualified immunity as it applies to all non-entity defendants and having determined that various claims are precluded as a matter of law, the Court now addresses each individual cause of action. Plaintiffs bring multiple causes of action against defendants pursuant to 42 U.S.C. § 1983. In addressing a § 1983 suit, the Court must "identify the specific constitutional right at issue," and then "determine the elements of, and rules associated with, an action seeking damages for its violations." *Manuel v. City of Joliet*, __ U.S. __, 137 S. Ct. 911, 920 (2017) (citing *Albright v. Oliver*, 510 U.S. 266, 271 (1994); *Carey v. Piphus*, 435 U.S. 247, 257–58 (1978)). "Section 1983 creates a cause of action against "every person, who under color of any statute, ordinance, regulation, custom, or usage" subjects any person to deprivation of immunities secured by the Constitution or federal laws." *Crumpley-Patterson v. Trinity Lutheran Hosp.*, 388 F.3d 588, 590 (8th Cir. 2004) (quoting 42 U.S.C. § 1983).

1. *First Cause of Action: Fourth Amendment Illegal Searches and Seizures*

Plaintiffs assert that the City of Omaha and members of OPD engaged in illegal searches on March 25, April 3, May 15, and May 27, 2020, of Plaintiffs' property. Filing 68 at 21-3. In *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, (1978), the Supreme Court held that a municipality is a "person" that can be liable under § 1983. *Szabla v. City of Brooklyn Park*, 486 F.3d 385, 389 (8th Cir. 2007) (citing *Monell*, 436 U.S. at 690). At the same time, the Court concluded that a municipality may not be found liable "unless action pursuant to official municipal policy of some nature caused a constitutional tort." *Szabla*, 486 F.3d at 389 (quoting *Monell*, 436 U.S. at 691). "The Court did not address the full contours of municipal liability under § 1983, but established that a municipality cannot be held liable on a respondeat superior theory, that is, solely because it employs a tortfeasor." *Szabla*, 486 F.3d at 389 (citing *Monell*, 436 U.S. at 691). Plaintiffs do not allege facts of any sort of official policy on the part of OPD or City of Omaha. Because Plaintiffs fail to allege a basis for municipal liability for the City of Omaha, the cause of action is dismissed as to the City of Omaha.

"The Supreme Court has interpreted the Fourth Amendment as proscribing unreasonable searches that intrude upon a person's reasonable expectation of privacy." *Azam v. City of Columbia Heights*, 865 F.3d 980, 989 (8th Cir. 2017) (citing *Bond v. United States*, 529 U.S. 334, 338-39 (2000)). "[A] party asserting a violation of his or her reasonable expectation of privacy must show both 1) 'an actual (subjective) expectation of privacy,' and 2) 'that the expectation [is] one that society is prepared to recognize as 'reasonable.' " *Id.* (quoting *United States v. DE L'Isle*, 825 F.3d 426, 431 (8th Cir. 2016)); *United States v. Lewis*, 864 F.3d 937, 941 (8th Cir. 2017) (alteration in original).

Individuals "can have a reasonable expectation of privacy in commercial premises, although that expectation 'is different from, and indeed less than, a similar expectation in an individual's home.'" *Lewis*, 864 F.3d at 941 (quoting *New York v. Burger*, 482 U.S. 691, 700 (1987)). A person "in a commercial establishment in an area open to the general public has no objectively reasonable expectation of privacy therein." *United States v. Perry*, 548 F.3d 688, 691 (8th Cir. 2008). "Even if the general public is not invited onto commercial premises, an individual's expectation of privacy is not reasonable if he or she would reasonably expect the general public to enter the premises anyway." *Lewis*, 864 F.3d at 941 (citing *United States v. Long*, 797 F.3d 558, 565 (8th Cir. 2015)).

*Lewis* involved detectives who entered a tattoo parlor, looking for a person of interest or information on the person of interest. 864 F.3d at 940. The tattoo parlor was divided into different areas including a reception area, a separate work area with stations for tattooing customers, and a back room with a door on it. *Id.* The Eighth Circuit found that the defendant did not have a reasonable expectation of privacy in the work area because even though the work area was not open to the public (customers had to be invited by employee to enter work area), the officers followed "the protocol that a reasonable member of the general public seeking to do business" with the shop would follow. *Id.* (citing *Maryland v. Macon*, 472 U.S. 463, 470 (1985)). "An undercover officer does not violate the Fourth Amendment merely by accepting an offer to do business that is freely made to the public." *Macon*, 472 U.S. at 470. To show a reasonable expectation of privacy, one must demonstrate that 1) the area is not open to the general public, and 2) even if the general public is not invited onto commercial premises, the expectation of privacy is unreasonable if one would reasonably expect the general public to enter the premises anyway. *Lewis*, 864 F.3d at 942 (citing *Long*, 797 F.3d at 565-66 (8th Cir. 2015).

a. March 25, 2020

On March 25, 2020, Plaintiffs allege that Martinez entered Club Omaha without a warrant and told Plaintiffs there was a 10-person congregation limitation including staff. Filing 68 at 3-4. Club Omaha is a commercial establishment. Filing 68 at 19. Under the standard articulated above, Plaintiffs do not allege that Martinez entered any area of Club Omaha that Plaintiffs would have an objectively reasonable expectation of privacy. *See Lewis*, 864 F.3d at 941-42.

b. April 3, 2020

On April 3, 2020, Plaintiffs allege that OPD officers entered Club Omaha and Club 120 without a warrant at 9:10 p.m. and engaged in an illegal search of the property. Filing 68 at 4. The OPD officers executed Club Omaha memberships to gain entry to Club Omaha. Filing 68 at 4. Upon entry, the undercover police officers purportedly requested that a Club Omaha dancer come closer than six feet for a dance, and then the officer issued a ticket to the club. Filing 68 at 4. "An undercover police officer's entry by consent, though obtained by deception, is not prohibited by the Fourth Amendment." *Shigemura*, 682 F.2d at 706 (citing *Lewis v. United States*, 385 U.S. 206, 210-12 (1966)). "It is well settled that the fact that officers or employees of the Government merely afford opportunities or facilities for the commission of the offense does not defeat the prosecution. Artifice and stratagem may be employed to catch those engaged in criminal enterprises." *Jacobson*, 503 U.S. at 548 (internal citations removed). Plaintiffs did not allege that any defendants accessed any area of Club Omaha that Plaintiffs would have a reasonable expectation of privacy. Thus, Plaintiffs fail to allege sufficient facts to give rise to a Fourth Amendment claim.

c. May 15, 2020

According to the Amended Complaint, on May 15, 2020, after 8:00 p.m., approximately six OPD officers entered Club Omaha property without a warrant and attempted to enter the club

without a warrant. Filing 68 at 8. Applying the same the analysis as that regarding the March 25 event, Plaintiffs have failed to allege sufficient facts that demonstrate the OPD officers conducted a search of an area where Plaintiffs had a reasonable expectation of privacy on May 15.

      d.  May 27, 2020

On May 27, 2020, at 10:00 p.m., Plaintiffs allege Defendants entered Club Omaha and Club 120 pursuant to a day warrant and engaged in a search with several officers. Filing 68 at 9. Both the City and the County Defendants argue this cause of action should be dismissed because County and City defendants were not present on May 27, 2020. *See* Filings 74 at 14, 71 at 12. The Court considers the Nebraska State Patrol Police Report, Filing 70-8, as a public record[16] which shows that neither OPD nor Douglas County Sheriff's Department officers were present during the execution of the search warrant by Nebraska State Patrol.[17] Therefore, Plaintiffs have failed to allege sufficient facts that give rise to a Fourth Amendment violation by Defendants, and the first cause of action is dismissed without prejudice as to all defendants.

    *2.*  *Second Cause of Action: First Amendment Violations of Free Speech, Expression and Assembly*

Plaintiffs allege Defendants persecuted and discriminated against Plaintiffs for exercising their First Amendment rights of congregation, free speech, peaceful assembly, and free expression through the act of nude dancing. Filing 68 at 23-24. To prevail on a First Amendment retaliation claim, a plaintiff must show "(1) that he engaged in a constitutionally protected activity; (2) that the defendant took adverse action against him that would chill a person of ordinary firmness from

---

[16] *See Ashford v. Douglas Cnty.*, 880 F.3d 990, 992 (8th Cir. 2018) Furthermore, a "police report is a public record subject to judicial notice." *See Kaempe v. Myers*, 367 F.3d 958, 965 (D.C. Cir. 2004).

[17] Plaintiffs submitted declarations from their attorney, Evan Spencer, and plaintiff Shane Harrington in support of their Brief in Opposition to Defendants' Motion to Dismiss, Filing 78. The Court will not consider those items regarding the motion to dismiss because the documents are neither embraced by the Amended Complaint nor public records. As noted in *Stahl*, the Court has discretion whether to accept any material beyond the pleadings offered in conjunction with a Rule 12(b)(6) motion. 327 F.3d at 701.

continuing in the activity; and (3) that the adverse action was motivated in part by plaintiff's exercise of his constitutional rights." *Eggenberger v. W. Albany Tp.*, 820 F.3d 938, 943 (8th Cir. 2016) (quoting *Scheffler v. Molin*, 743 F.3d 619, 621 (8th Cir. 2014)). Specifically, a "plaintiff must show a causal connection between a defendant's retaliatory animus and [plaintiff's] subsequent injury." *Osborne v. Grussing*, 477 F.3d 1002, 1005 (8th Cir. 2007) (quoting *Hartman v. Moore*, 547 U.S. 250, 259 (2006)) (alteration in original).

In *L.L. Nelson Enter., Inc. v. Cnty. of St. Louis*, 673 F.3d 799, 807-10 (8th Cir. 2012), the Eighth Circuit found the plaintiff sufficiently pled a First Amendment retaliation claim by alleging a causal connection between the defendant's retaliation and a subsequent injury. Facts supporting that causal connection include that the plaintiff, a business, had knowledge of and participated in an illegal kickback scheme, and when the plaintiff withdrew from it, the plaintiff's business slowed down. *Id.* at 803. The plaintiff complained to the sheriff and other officials, after which, one sheriff's deputy allegedly said she would put the plaintiff out of business. *Id.* at 804. That same deputy implemented procedures and practices that "were designed to disadvantage" the plaintiff. *Id.* at 804. In addition, the plaintiff cooperated with federal prosecutors, and thereafter the deputy continued and increased the limitations on plaintiff's business opportunities. *Id.* at 804.

Unlike the specific factual allegations set forth in *L.L. Nelson*, the Amended Complaint does not offer anything that would state a plausible First Amendment retaliation claim. Plaintiffs make only conclusory allegations of discrimination and intimidation in order "to scare people from working for Club Omaha." Filing 68 at 24. These conclusory allegations are insufficient to allege Defendants took adverse action against Plaintiffs to chill exercise of their rights, and Plaintiffs fail to allege any facts that would allow for a reasonable inference of causal connection between the exercise of their rights and any subsequent injury. Thus, Plaintiffs' First Amendment retaliation

claim is dismissed without prejudice because Plaintiffs fail to allege facts showing a causal connection between their exercise of First Amendment rights and any subsequent injury.

    *3. Third Cause of Action: Equal Protection Violations*

Plaintiffs allege Defendants denied Plaintiffs equal protection of the law by (1) making the 2019 liquor license contingent on dismissing Plaintiffs' litigation, (2) failing to provide notice of the public hearing for August 2020, (3) requiring renovations to newly-acquired property of Club 120, (4) denying Club 120's liquor-license application after approving one for the previous tenant, (5) requiring Club 120 to obtain a dance permit, (6) treating Club Omaha differently than the prior occupant at same location, (7) repeatedly entering and searching Plaintiffs' property without a warrant, (8) failing to provide notice prior to serving citations for violations of DHMs, (9) holding Plaintiffs accountable for the six-foot separation standard while failing hold other businesses to the same standard, (10) failing to arrest individuals who commit crimes on Plaintiffs' property, (10) the fact Plaintiffs' members include minorities and other protected classes, and (11) subjecting Plaintiffs to discrimination and harassment based upon Plaintiffs' manner of assembly. Filing 68 at 24-8. Plaintiffs do not specify under which equal protection theory, traditional or class-of-one, the cause of action is brought; therefore, the Court examines the facts alleged under both theories. The Court finds Plaintiffs' have failed to plausibly allege a violation under either theory.

    a. Traditional Theory

Under the traditional theory of equal protection, a plaintiff must allege that he is part of a suspect or quasi-suspect classification; if no suspect classification allegation is made, then the court applies rational basis review to the action. *Gallagher v. City of Clayton*, 699 F.3d 1013, 1018-19 (8th Cir. 2012). Under rational basis review, the court upholds the state action "so long as it bears a rational relation to some legitimate end." *Walker v. Hartford Life and Accident Ins.*

*Co.*, 831 F.3d 968, 976 (8th Cir. 2016) (citing *Romer v. Evans*, 517 U.S. 620, 631 (1996)). State

actions are "accorded a strong presumption of validity[.]" *Gallagher*, 699 F.3d at 1018. (quoting

*Heller v. Doe*, 509 U.S. 312, 319-20 (1993)). Further, it is the plaintiff's burden to "'negative every

conceivable basis which might support' the [action]." *Id.* (quoting *Lehnhausen v. Lake Shore Auto*

*Parts Co.*, 410 U.S. 356, 364 (1973)) (alteration in original). "All that must be shown is any

reasonably conceivable state of facts that could provide a rational basis for the classification, it is

not necessary to wait for further factual development." *Carter v. Arkansas*, 392 F.3d 965, 968 (8th

Cir. 2004) (internal citations omitted) (quoting *Knapp v. Hanson*, 183 F.3d 786, 788 (8th Cir.

1999)). "In other words, a district court may conduct a rational basis review on a motion to

dismiss." *Carter*, 392 F.3d at 968.

Plaintiffs do not allege they are members of a suspect or quasi-suspect classification.

Plaintiffs do allege that some of their members, customers, employees, and contractors are

members of suspect or quasi-suspect classifications, but do not allege any facts that indicate

Defendants' actions were based on those classifications. Filing 68 at 27. Therefore, rational basis

review applies to Plaintiffs' traditional equal-protection allegations. Rational bases for the actions

are apparent, even without an evidentiary record.[18] Under rational basis review, courts have found

public health and safety, aesthetic rationales, even controlling the flow of traffic as legitimate state

interests. *Gallagher*, 699 F.3d at 1020; *Johnson v. City of Little Rock*, 164 F.Supp.3d 1094, 1100

(E.D. Ark. 2016) (citing *Cox v. Louisiana*, 379 U.S. 536, 554–55 (1965)). The alleged actions of

the defendants are rationally related to public health, safety and welfare, and therefore, serve a

---

[18] Some of the allegations do not allege different treatment based on any classification, namely allegations (1) making the 2019 liquor license contingent on dismissing Plaintiffs' litigation, (2) failing to provide notice of the public hearing for August 2020, and (7) repeatedly entering and searching Plaintiffs' property without a warrant. Filing 68 at 24-8. Under Rule 8(a), a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief" Fed.R.Civ.Pro. 8(a). Plaintiffs fail to provide sufficient facts or to explain how those allegations could give rise to an Equal Protection claim.

legitimate interest. Given the strong presumption of validity under rational basis review and the burden on Plaintiffs to address every conceivable basis, the Court finds Plaintiffs failed to allege a plausible traditional equal-protection claim based on any of the eleven allegations.

        b.    Class-of-One Theory

Under a class-of-one theory, a plaintiff does "not allege membership in a class or group" but "that she has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Robbins v. Becker*, 794 F.3d 988, 995 (8th Cir. 2015) (quoting *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000) (per curiam)). Absent a showing that other similarly-situated persons received preferential treatment, the plaintiff does not have a viable equal-protection claim. *Id.* "To be similarly situated for purposes of a class-of-one equal-protection claim, the persons alleged to have been treated more favorably must be identical or directly comparable to the plaintiff in all material respects." *Id.* (quoting *Reget v. City of La Crosse*, 595 F.3d 691, 695 (7th Cir. 2010)).

In *Mathers v. Wright*, 636 F.3d 396, 402 (8th Cir. 2011), the plaintiff successfully pled a class-of-one equal-protection claim to survive a motion to dismiss. The plaintiff alleged that her daughter was singled out from other students in her classroom by the defendant who refused to teach the student, did not allow her to go to recess or participate in fire drills, and made her crawl on the floor. *Id.* at 400. The plaintiff alleged her daughter was treated differently than the other students in the classroom for no reason other than personal animus based on her daughter's disability. *Id.* at 400-01.

Unlike in *Mathers*, where the similarly-situated students who were present at the same time and place and were of similar age to the daughter, alike in almost all ways except for the daughter's disability, Plaintiffs fail to identify an identical or directly comparable, similarly-situated

individual or business. Plaintiffs allege that Club 120 was treated differently than a prior tenant at the same location for purposes of a liquor license. Filing 68 at 25. Plaintiffs do not allege sufficient facts that the previous tenant was identical or directly comparable in all material aspects as required by *Robbins*. 794 F.3d at 995. The prior tenant was a nightclub with dancing, present at the same premises for seven years, but the tenant is no longer located at the premises. Filing 68 at 25-6. It is not alleged that the tenant is still in operation, so whatever allegedly different treatment the previous tenant received in the past, it was not at the same time or in a similar time frame. Thus, Plaintiffs allege insufficient facts to establish that the prior tenant is similarly situated to Club 120 in all material respects including timeframe. Plaintiffs fail to allege sufficient facts to state a plausible equal protection claim under the class-of-one theory.[19]

Even if Plaintiffs had alleged a similarly-situated individual, their equal-protection claim would fail because their allegations involve discretionary decision-making by government, as articulated in *Novotny v. Tripp Cnty.*, 664 F.3d 1173 (8th Cir. 2011). The Supreme Court "has declined to apply the [class-of-one theory] against state action "which by [its] nature involve[s] discretionary decision-making based on a vast array of subjective, individualized assessments." *Novotny*, 664 F.3d at 1179 (quoting *Enquist v. Or. Dep't of Agric.*, 553 U.S. 591, 603 (2008) (alteration in original)). "The class-of-one theory prohibits "arbitrary government classification," such as where legislation or a regulation is enacted that targets a specific landowner and applies a different rule to him than his neighbors." *Id.* (See *Olech*, 528 U.S. at 564–65 (finding equal-protection violation where village required fifteen–foot easements of property owners seeking access to water supply but conditioned plaintiff's connection on a grant of a thirty-three–foot

---

[19] Plaintiffs make the conclusory allegation that "Plaintiffs are aware of numerous bars, clubs, and lounges in Omaha that allow dancing without having a dance permit." Filing 68 at 16. That conclusory allegation is insufficient to plausibly allege business identical or directly comparable to Plaintiffs in all material respects. *Robbins*, 794 F.3d at 995.

easement)). "However, a class-of-one claim does not extend to cases where the rules are uniformly applicable and a state official exercises his 'discretionary authority based on subjective, individualized determinations.'" *Id.* (See *Engquist*, 553 U.S. at 602–03). "An equal protection claim does not lie where a traffic officer gives only one person a ticket on a busy highway because 'allowing an equal protection claim on the ground that a ticket was given to one person and not others, even if for no discernible or articulable reason, would be incompatible with the discretion inherent in the challenged action.'" *Id.* (quoting *Enquist*, 553 U.S. at 604).

The approval of a liquor license or dance permit and enforcing codes are discretionary actions exercised by City and County Defendants, similar to the traffic officer ticketing one person out of many possible persons as referenced in *Novotny* and *Enquist*. Therefore, even if Plaintiffs had alleged a similarly-situated individual, the discretionary aspect of actions based on subjective, individualized assessments makes the alleged facts incompatible with an equal protection class-of-one claim. Thus, Plaintiffs' third cause of action, including its eleven related allegations, is dismissed without prejudice.

### 4. *Fourth Cause of Action: Title VI Civil Rights Act*

Plaintiffs allege Defendants violated Title VI of the Civil Rights Act by discriminating against Plaintiffs' members, customers, employees, and contractors who are members of protected classes, including minorities, women, those with disabilities, African-Americans, Latinos, Asians, other non-whites, and a high percentage of members of the LGBTQ community. Filing 68 at 28. City Defendants move to dismiss this cause of action on the basis that Plaintiffs fail to plead sufficient facts to support intentional discrimination. Filing 74 at 18-9. County Defendants move to dismiss this cause of action based on lack of standing to present claims on behalf of members, customers, employees, and contractors under 12(b)(1), as well as insufficient facts allege to

support a claim under Title VI. Filing 71 at 5-6, 17. Upon review and as discussed below, Plaintiffs' Title VI claim under the Civil Rights Acts is dismissed for lack of standing and failure to state a claim upon which relief can be granted.

      a.  Associational Standing

Club Omaha alleges it has associational standing to bring claims on behalf of its members but provides no factual support for that assertion other than a recital of the requirements for standing. *See* Filing 68 at 28. The plaintiff bears the burden of proving standing. *Pucket v. Hot Springs Sch. Dist. 23-2*, 526 F.3d 1151, 1157 (8th Cir. 2008). An association has standing to bring suit on behalf of its members when "(a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." *Kuehl v. Sellner*, 887 F.3d 845, 851 (8th Cir. 2018) (quoting *Hunt v. Wash. State Apple Advert. Comm'n*, 432 U.S. 333, 343 (1977)). The Amended Complaint does not state: (1) how Plaintiffs' members would have standing to sue in their own right; (2) how the members' interests are germane to the interests of Club Omaha; or (3) that the claim asserted or relief requested does not require the participation of the members. Plaintiffs fail to allege sufficient facts that would allow them to bring suit on behalf of Club Omaha's members, and thus Plaintiffs lack standing to bring their Title VI claim.

      b.  Failure to State a Claim

Not only do Plaintiffs lack standing, but the Amended Complaint also fails to state a claim under Title VI.

Title VI of the Civil Rights Act of 1964 provides: "No person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the

benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 42 U.S.C. § 2000d. To plead a plausible Title VI claim, the plaintiff must allege facts that show plaintiff's race, color, or national origin motivated a defendant's discriminatory conduct. *Rowles v. Curators of Univ. of Mo.*, 983 F.3d 345, 355 (8th Cir. 2020). In *Rowles*, the plaintiff's Title VI claim survived a motion to dismiss by including allegations that a defendant "told him in a prior investigation that he looked like someone who might commit sexual assault"; "a forthcoming law review article posited that the University's enforcement of Title IX 'likely' discriminates against African-Americans"; "on information and belief, a statistical analysis of Title IX sanctions imposed by the University over the last several years will show a pattern and practice of selective enforcement against male students"; and alleging the plaintiff "would have been treated less harshly if he were a white Ph.D. candidate." *Rowles*, 983 F.3d at 353. Both the district court and Circuit court noted that plaintiff's request to deny the motion to dismiss "stretched the confines of Fed. R. Civ. P. 12(b)(6)," but the plaintiff argued that the information needed was in the possession of the defendant. *Id.*

Here, Plaintiffs do not allege sufficient facts to enter even the "stretched confines" accepted in *Rowles*. Plaintiffs note that their members, customers, employees, and contractors are "members of protected classes, including minorities, women, the disabled, African-Americans, Latinos, and Asians." Filing 68 at 28. None of the facts alleged lead to a reasonable inference that Defendants were motivated to discriminate against Plaintiffs on the basis of race, color, or national origin of the Plaintiff's members. Thus, Plaintiffs fail to state a claim upon which relief can be granted under Title VI on their own behalf and fail to allege sufficient facts that would allow associational standing on their members' behalf. Plaintiffs' Title VI claim is dismissed without prejudice.

   5.  *Fifth Cause of Action: Due Process*

Plaintiffs allege due process violations for a variety of actions by County and City Defendants. Plaintiffs do not specify whether their due process claim is procedural or substantive but fail to state a plausible claim under either iteration of due process.

The due process clause of the Fourteenth Amendment prohibits state governments from depriving "any person of life, liberty or property, without due process of law . . . ." U.S. Const. amend. XIV, § 1. This clause has two components: procedural due process and substantive due process. *Young v. City of St. Charles*, 244 F.3d 623, 627 (8th Cir. 2001), as corrected (Mar. 27, 2001), as corrected (May 1, 2001). Analysis of either must begin with an examination of the interest allegedly violated. *Id.* (citing *Dover Elevator Co. v. Ark. State Univ.*, 64 F.3d 442, 445–46 (8th Cir. 1995)). Plaintiffs allege due process violations based on Defendants' alleged (1) failure to return emails, (2) failure to give warning of violation of DHMs prior to ticketing, (3) failure to provide notice of the August 11, 2020 liquor hearing and to obtain consent for rescheduling the hearing, (4) issuing tickets for violation of DHMs, (5) referencing a pending FLSA case against Plaintiffs, and (6) illegal search of private property. Filing 68 at 29-30. The Court analyzes Plaintiffs' claim as one of both procedural and substantive due-process and finds that the Amended Complaint fails to state a claim upon which relief can be granted regarding due process.

a. Procedural Due Process

"To establish a violation of procedural due process, a plaintiff must show he has been deprived of a constitutionally protected life, liberty, or property interest." *Mulvenon v. Greenwood*, 643 F.3d 653, 657 (8th Cir. 2011). The Court will review each of Plaintiffs' alleged due process violations to determine if a constitutionally protected life, liberty, or property interest was involved. First, Plaintiffs allege a failure to return emails regarding the DHMs as a due process violation. Filing 68 at 29. In *Orr v. Missouri* the plaintiff alleged that officials failed to respond to

emails, and the district court found this was insufficient to state a claim for a due-process violation under § 1983. 2010 WL 2629557 at *3 (June 28, 2012, W.D. Mo. Central Division). As described by the *Orr* court, the failure to respond to emails does not involve a constitutionally protected life, liberty, or property interest.

Second, Plaintiffs allege City Defendants failed to give Plaintiffs warnings for violations of DHMs prior to ticketing them and also allege the actual issuing of tickets for violating the DHM were violations of Plaintiffs' right to due process. Filing 68 at 29-30. Plaintiffs note that the DHMs dated March 18 and March 20 were disseminated via mass media. Filing 68 at 3. Dissemination via mass media complies with 173 Neb. Admin. Code, Ch. 6, § 007, 7.02, which states, "[o]rders directed to groups of individuals or populations may be disseminated by mass media." Plaintiffs are not entitled to individual notice of a DHM that applies to all of Douglas County, and therefore, the dissemination methods do not violate Plaintiffs' right to due process. Similarly, the actual issuance of citations to Plaintiffs for violating the DHMs does not violate Plaintiffs' right to due process. "The rule that 'ignorance of the law will not excuse' is deep in our law." *Lambert v. California*, 355 U.S. 225, 228 (1957). "Engrained in the concept of due process is the requirement of notice." *Id.* Plaintiffs received the same notice as all Douglas County residents, in line with Neb. Admin. Code, and ignorance of the DHMs is not an excuse for violating them.

Third, Plaintiffs allege that Defendants violated Plaintiffs' due-process rights by referencing a pending FLSA case against Plaintiffs during the July 28, 2020, City Council meeting, and by illegally searching Plaintiffs' property. Filing 68 at 30. As discussed in the Fourth Amendment section above, Plaintiffs have failed to state sufficient facts showing an unlawful search of commercial property. Plaintiffs have also not alleged a life, liberty, or property interest that was procedurally violated by the mentioning of a pending lawsuit.

Finally, Plaintiffs allege that Defendants denied their right to due process by failing to give notice of the postponed hearing on August 11, 2020. Filing 68 at 30. As with all due process claims, the first step is determining whether a constitutionally protected life, liberty, or property interest has been alleged. *See Mulvenon*, 643 F.3d at 657. No facts alleged in the Amended Complaint indicate a life or liberty interest is in question, which leaves a property interest as the remaining possible interest. "To have a constitutionally cognizable property interest in a right or a benefit, a person must have 'a legitimate claim of entitlement to it.'" *McGuire v. Indep. Sch. Dist. 833*, 863 F.3d 1030, 1034 (8th Cir. 2017) (quoting *Austell v. Sprenger*, 690 F.3d 929, 935 (8th Cir. 2012)). "Property interests are not created by the Constitution, they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law . . . ." *McGuire*, 863 F.3d at 1034 (alteration in original) (internal quotations removed) (quoting *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 538 (1985)). To determine whether Plaintiffs have a protected property interest in a liquor license and the hearing for it, the Court turns to Nebraska state law. The Nebraska Supreme Court has conclusively held that "a liquor license is a purely personal privilege, does not constitute property, and vests no property rights in a licensee." *Bali Hai', Inc. v. Neb. Liquor Control Comm'n*, 236 N.W.2d 614, 618 (Neb. 1975), *see also* Neb. Rev. St. § 53–149 (2015). Since Plaintiffs do not have a protected property interest in the liquor license as granted by the State, Defendants are not required to give a hearing. See *Bd. of Regents v. Roth*, 408 U.S. 564, 578 (1972) (Plaintiff did not have a protected property interest in re-employment at a state university, and therefore, "he did not have a property interest sufficient to require the University authorities to give him a hearing when they declined to renew his contract of employment.")

The Omaha Municipal Code ("OMC") creates an interest in the hearing itself, and the code sections are included in the Amended Complaint and are properly considered by the Court.

> Omaha Municipal Code, Section 15-32. – Hearing on application for new license or change to existing license
> (a) Notice of any hearing upon an application for a new liquor license, for a removal of an existing license to a different location, for permission to add to or delete from licensed premises, or upon any other matter not otherwise provided shall be given to the applicant by the city clerk.

> Omaha Municipal Code, Section 15-33. - Hearing on revocation or application for renewal.
> (a) Hearings upon cancellation or revocation of a license or upon applications for renewal of outstanding retail liquor licenses, or bottle club licenses shall, as much as reasonably possible, comply with the requirements of due process. Written notice of the date, time and location of the hearing shall be given the applicant by the city clerk a reasonable time prior to the hearing.

In compliance with OMC, Section 15-32, Defendants gave notice and Plaintiffs acknowledge that they received notice for the July 28, 2020, City Council hearing. Filing 68 at 12. Plaintiff Harrington was at the July 28, 2020 where it was moved and seconded to postpone the meeting until August 11, 2020. Filing 75-2 at 12. Additionally, in the Journal Record[20] for the City of Omaha City Council Meeting for July 28, 2020, it states that the liquor license application for Club 120 is postponed until the August 11, 2020, City Council Meeting. Filing 75-2 at 12-13. Plaintiffs cite OMC, Section 15-33 and its additional requirements for notice. However, Section 15-33 does not apply because the hearing in question was for a new liquor license, and not a cancellation or revocation of the license.

The City of Omaha properly gave Plaintiffs notice of the July 28, 2020 hearing. This Court will not read the Omaha Municipal Code to require the City of Omaha to give separate notice to Harrington of the postponement of the hearing where Harrington was in attendance at the meeting

---

[20] The City Council Journal Record is a public record that can be considered without converting the motion to dismiss into a motion for summary judgment. *Ashford*, 880 F.3d at 992. See *Harrington v. Seward Cnty.*, 2017 WL 1080931 at *8 (D.Neb. March 22, 2017).

where the postponement was announced. Further, the Omaha Municipal Code requires notice to be given as to a hearing on an application for a new license or to change an existing license, but it does not require a separate additional notice if a hearing, which was properly noticed, is postponed after discussion on the application. To the extent that a property right was created by the OMC, Plaintiffs fail to allege sufficient facts to show that the Defendants violated Plaintiffs' due process rights by providing notice via the meeting where Harrington was present and the publicly available Journal Record.

            b.   Substantive Due Process

As with procedural due process, the possession of a protected life, liberty, or property interest is a condition precedent to a substantive-due-process claim. *Mulvenon*, 643 F.3d at 659. Accepting all facts in the Amended Complaint as true and granting all reasonable inferences in favor of the Plaintiffs, the Court finds Plaintiffs fail to allege sufficient facts that would give rise to a protected life, liberty, or property interest.

However, even if Plaintiffs had alleged the violation of a protected interest, Plaintiffs' fail to state a plausible substantive-due-process claim. "To state a substantive due process claim, [a plaintiff] must allege that a government action was 'sufficiently outrageous' or 'truly irrational, that is, something more than . . . arbitrary, capricious, or in violation of state law.'" *Young*, 244 F.3d at 628 (quoting *Anderson v. Douglas Cnty.*, 4 F.3d 574, 577 (8th Cir. 1993); *Riley v. St. Louis Cnty.*, 153 F.3d 627, 631 (8th Cir. 1998)). Sufficiently outrageous or truly irrational is a high standard. *Christiansen v. West Branch Cmty. Sch. Dist.*, 674 F.3d 927, 937 (8th Cir. 2012). To find a government action sufficiently outrageous requires "violations of personal rights . . . so severe . . . so disproportionate to the need presented, and . . . so inspired by malice or sadism rather than a merely careless or unwise excess of zeal that it amounted to brutal and inhumane abuse of official

power literally shocking to the conscience." *Christiansen*, 674 F.3d at 937-38 (quoting *C.N. v. Willmar Pub. Schs., Indep. Sch. Dist. 347*, 591 F.3d 624, 634 (8th Cir. 2010)). The facts alleged do not allow the Court to reasonably infer any action taken by Defendants as sufficiently outrageous or truly irrational. Plaintiffs fail to plead a plausible substantive due process claim. Thus, the Amended Complaint contains insufficient facts to state a claim under procedural or substantive due process, and the fifth cause of action is dismissed without prejudice.

6. *Sixth Cause of Action: Establishment Clause*

Plaintiffs allege that Defendants violated the Establishment Clause by permitting churches to open and operate during May of 2020 while requiring bars, bottle clubs, and strip clubs to close during the same time. Filing 68 at 30. The Establishment Clause of the First Amendment provides that "Congress shall make no law respecting an establishment of religion." U.S. Const. amend. I. All Defendants argue, and the Court agrees, the DHMs underlying Plaintiffs' Establishment-Clause claim were issued by DHHS, not by Defendants.

The Douglas County DHMs set limits on public gatherings and liquor sales, but did not single out churches, bottle clubs, or strip clubs for closure. Filing 70-3. The DHHS DHM dated April 30, 2020, allowed beauty salons, massage therapy services, tattoo parlors to reopen under specific circumstances, while closing all gentleman's clubs, bottle clubs, and indoor movie theaters. Filing 70-5 at 3, 5. Additionally, the DHHS DHM allowed for religious services, if parties maintained a minimum of six feet of separation. Filing 70-5 at 5. The Court accepts all facts stated in the Amended Complaint as true, except those facts directly contradicted by public records and documents necessarily embraced by the Amended Complaint. The March 18 and March 20 DHMs did not close strip clubs and allow churches to meet, but the Nebraska DHHS DHM did. *Compare* Filing 70-3, *with* Filing 70-5. Therefore, Plaintiffs' claim against Douglas County and the City of

Omaha fails to allege sufficient facts that would allow the Court to reasonably infer that the named defendants violated the Establishment Clause.

To the extent that Amended Complaint alleges any actions that could be attributed to County or City Defendants,[21] Plaintiffs fail to plead sufficient facts to state a plausible claim under the Establishment Clause. Plaintiffs' sixth cause of action is dismissed without prejudice.

7. *Seventh Cause of Action: 42 U.S.C. § 1985*

Plaintiffs allege Defendants violated their rights under 42 U.S.C. § 1985(2) and (3) by entering Club Omaha at least ten times for warrantless searches, interfering with Plaintiffs' protesting, and denying Plaintiffs equal protection under the law. Filing 68 at 31-33. City Defendants moved to dismiss this cause of action based on claim and issue preclusion and failure to state a cognizable claim under the statute. Filing 74 at 10, 22-25. To the extent the issue relates to the 2018 protests, it is barred by claim and issue preclusion. *See* Sect. IV.B. County Defendants moved to dismiss this cause of action based on failure to state a claim upon which relief can be granted. Filing 71 at 21. As discussed below, because the Court finds that the Amended Complaint fails to allege sufficient facts to state a plausible claim under 42 U.S.C. § 1985, which prohibits conspiracies to deprive any person or class of persons of equal protection of the law, Plaintiffs' cause of action under 42 U.S.C. § 1985 is dismissed against all defendants.

"In order to state a claim for conspiracy under § 1985, a plaintiff 'must allege with particularity and specifically demonstrate with material facts that the defendants reached an agreement.'" *Kelly v. City of Omaha*, 813 F.3d 1070, 1077-78 (8th Cir. 2016) (quoting *City of Omaha Emps. Betterment Ass'n v. City of Omaha*, 883 F.2d 650, 652 (8th Cir. 1989)). "This

---

[21] Am. Compl. ¶208. Plaintiffs claim Defendants are highly religious Christians who have a greater loyalty to their Bible than the United States Constitution and the Nebraska Constitution. Am. Compl. ¶209 Defendants attend the same churches, pray to the same God and Jesus, and are in alliance against Plaintiffs, their dancers and patrons due to religious reasons. Filing 68 at 31.

standard requires that 'allegations of a conspiracy [be] pleaded with sufficient specificity and factual support to suggest a meeting of the minds directed toward an unconstitutional action.'" *Kelly*, 813 F.3d at 1078 (quoting *Nelson v. City of McGehee*, 876 F.2d 56, 59 (8th Cir. 1989)). In *Kelly,* the plaintiff failed to allege facts showing that any of the defendants' alleged misconduct arose from any such meeting of the minds. *Id.* The complaint's "only reference to any communication that allegedly took place" between defendants was the claim that a defendant, "at some unspecified date, directed other members of the permits and inspections department" to deny plaintiff permits "until she met with him." *Id.* at 1078.

Here, Plaintiffs do not allege any communication occurred and do not allege sufficient facts to allow the Court to reasonably infer a conspiracy between the defendants. Under the standard set forth in *Kelly*, allegations of a conspiracy must be pled with sufficient specificity and factual support to suggest a meeting of the minds, and the Amended Complaint does not allege with any specificity or factual support that Douglas County or the City of Omaha (and their officials)[22] had a meeting of the minds to deprive Plaintiffs of their constitutional rights. Plaintiffs have failed to state a claim under § 1985 (2) or (3), and this cause of action is dismissed without prejudice.

### 8. *Eighth Cause of Action: Promissory Estoppel*

Plaintiffs' eighth cause of action is promissory estoppel based upon allegations that Plaintiffs' were granted permission to open Club Omaha but were later stymied from actually opening. Filing 68 at 33-35. Both City Defendants and County Defendants move to dismiss this

---

[22] Further, the intracorporate-conspiracy doctrine bars Plaintiffs' claim. "Because a conspiracy by its nature involves multiple parties, this doctrine provides that "a local government entity cannot conspire with itself through its agents acting within the scope of their employment." *Kelly*, 813 F.3d at 1078 (quoting *L.L. Nelson Enters., Inc. v. Cty. of St. Louis, Mo.*, 673 F.3d 799, 812 (8th Cir.2012)). Government agents can act within the scope of their employment duties "even though [a] complaint alleges improprieties in the execution of these duties." *Id.* Plaintiffs do not allege any facts that show any defendants were working outside the scope of their employment. Therefore, under the intracorporate-conspiracy doctrine, the City of Omaha could not have conspired with itself through its agents within the scope of their employment, and the same is true with Douglas County.

claim based on failure to state a claim upon which relief can be granted. Filings 71 at 22, 74 at 25-6. As discussed *supra* Section IV.B, this claim as asserted against City Defendants is barred by claim and issue preclusion. Based on the Court's reading of the Amended Complaint, Plaintiffs brought this claim against the City of Omaha, Mayor Stothert, and the City Council members, and not the County Defendants. *See* Filing 68 at 33 ("Plaintiffs submit this claim against Defendants the City of Omaha, Mayor Stothert and the Omaha City Council."). Nevertheless, the Court also finds that the Amended Complaint fails to state a claim for promissory estoppel.

Nebraska follows the Restatement of Contracts (Second) § 90 with regard to promissory estoppel. *Am. Shizuki Corp. v. Intl. Bus. Machines Corp.*, 251 F.3d 1206, 1208 (8th Cir. 2001) (citing *Yankton Prod. Credit Assn. v. Larsen*, 365 N.W.2d 430, 433 (Neb. 1985)). The Restatement explains that promissory estoppel is "a promise which the promisor should reasonably expect to induce action or forbearance on the part of the promisee or a third person and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise." Restatement of Contracts (Second) § 90(1). Plaintiffs provide a 2016 email chain,[23] as the basis for their promissory estoppel claim. Filing 68 at 34-5. In response to Plaintiffs' attorney inquiring about the legality of bottle club in Omaha, an assistant city attorney for Omaha replied with a description of the current state of law regarding bottle clubs. Filing 68 at 34. A statement

---

[23] The email chain is from William J. Acosta-Trejo to Paul Kratz, dated 10/31/2016 at 9:26 a.m., and was forwarded to Plaintiffs on 10/31/2016 at 4:19 p.m. Filing 68 at 33. It states as in relevant part as follows:

> Omaha doesn't have anything that's named a "bottle club". He simply describes a private club that's not open to the public. I assume that's members-only where the members bring their own alcohol in. Omaha just follows state law, which says you don't need a license to provide alcohol to your "guests" or to yourself. So if members bought alcohol, took the alcohol to the club, stored it at the club, and only provided it to themselves and their guests (people who have not paid them for the drinks) and the club doesn't provide the alcohol in exchange for getting paid, then I think state law allows this without a license. There's no need for an ordinance or anything local authorizing it.
>
> A license is needed if it's a place open to the general public or the club provides alcohol in exchange for payment. If the payment (dues) are just for use of the premises, food, etc., and not for access to alcohol, then no license is required under state law or any city ordinances. Filing 68 at 33-34.

regarding the current state of bottle club legality is not a promise that requires enforcement to avoid injustice or that the City of Omaha would reasonably expect to induce action. As Plaintiffs have failed to allege facts showing a promise was made, the promissory estoppel cause of action is dismissed with prejudice for failure to state a claim, in addition to being barred by claim and issue preclusion.

*9. Ninth Cause of Action: Breach of Contract*

Plaintiffs bring this cause of action against the City of Omaha and the Omaha City Council members jointly and individually alleging breaches of "a settlement agreement regarding three pending cases" and "a written agreement in 2016 wherein the City of Omaha granted Plaintiffs permission to open and operate Club Omaha."[24] [Filing 68 at 36-37](#). City Defendants move to dismiss this claim on the bases of failure to state a claim, claim preclusion, and issue preclusion.[25]

To sufficiently plead a breach of contract claim, the plaintiff must plead "the existence of a promise, its breach, damage, and compliance to any conditions precedent that activate the defendant's duty." *Henriksen v. Gleason*, 643 N.W.2d 652, 658 (Neb. 2002) (citing *Phipps v. Skyview Farms*, 610 N.W.2d 723 (Neb. 2000)). Plaintiffs allege that they reached a "settlement agreement" with the City of Omaha and City Council whereby Plaintiffs agreed to dismiss three lawsuits if the City granted a liquor license to Club 120. [Filing 68 at 36](#). Plaintiffs state Defendants breached this agreement by failing to grant a bottle club license to Club 120. [Filing 68 at 36](#). However, the Amended Complaint also states that a liquor license was granted to Plaintiffs on March 17, 2020, but Plaintiffs did not pick it up because the license was useless due to COVID-

---

[24] As discussed in Section IV.C.8 *supra*, an email describing current city and state law is not a promise. Similarly, it does not create a contract.

[25] County Defendants moved to dismiss this claim, but according to the Amended Complaint, the County Defendants are not named under this cause of action. [Filing 68 at 36-37](#). Therefore it is not necessary to dismiss the non-existent claim against them for breach of contract.

19 restrictions. Filing 68 at 36. Accepting all the facts alleged in the Amended Complaint as true and assuming for purposes of this motion that a contract was created, Defendants did not breach the contract when Plaintiffs refused to pick up the granted license. Plaintiffs' breach of contract cause of action is dismissed without prejudice.

### 10. Tenth Cause of Action: Civil Conspiracy

To the extent Plaintiffs are submitting a tenth cause of action of civil conspiracy, it is dismissed for failure to state a claim. To satisfy the standards of *Iqbal* and *Twombly*, a plaintiff must plead enough facts to state a claim that is plausible and that allows the court to draw reasonable inferences. "To prove a 42 U.S.C. § 1983 conspiracy claim, a plaintiff must show: (1) that the defendant conspired with others to deprive him of constitutional rights; (2) that at least one of the alleged co-conspirators engaged in an overt act in furtherance of the conspiracy; and (3) that the overt act injured the plaintiff." *White v. McKinley*, 519 F.3d 806, 814 (8th Cir. 2008) (citing *Askew v. Millerd*, 191 F.3d 953, 957 (8th Cir. 1999). "The plaintiff is additionally required to prove a deprivation of a constitutional right or privilege in order to prevail on a § 1983 civil conspiracy claim." *Id.*

Plaintiffs allege that "Defendants are jointly and severally liable for engaging in a conspiracy to commit the aforementioned constitutional violations against Plaintiffs." Filing 68 at 37. As discussed extensively in Section IV.C.7, Plaintiffs fail to allege sufficient facts to state any plausible claim for deprivation of any right under the United States Constitution. Nor have the Plaintiffs alleged with sufficient specificity that a "meeting of the minds" occurred. *Kelly*, 813 F.3d at 1077-78. Thus, Plaintiffs' civil conspiracy cause of action is dismissed because the conclusory allegations of the Amended Complaint are insufficient to state a plausible claim and do not allow the Court to draw any reasonable inferences of a civil conspiracy.

## V. CONCLUSION

In conclusion, all claims against the individual defendants in their official capacities are dismissed as redundant. All individual defendants are entitled to qualified immunity in their individual capacities. Therefore, all individual defendants are dismissed from this case.

The promissory estoppel claim is barred under claim and issue preclusion from *Harrington* (2019), as is the § 1985 conspiracy claim to the extent it involves the 2018 protest. All individual causes of action are dismissed for failure to allege sufficient facts to state a plausible claim.

IT IS ORDERED:

1. The Motion to Dismiss, Filing 69, filed by Defendants Douglas County, Timothy Dunning, and Adi Pour is granted as follows:

   a. Plaintiffs' Amended Complaint as to the County Defendants is dismissed without prejudice;

   b. Claims against individual county defendants in his or her official and individual capacity are dismissed;

2. The City Defendants' Unopposed Motion to Add Defendant John Henige to the Motion to Dismiss, Filing 86, is granted;

3. The Motion to Dismiss, Filing 73, filed by Defendants Scott Buresh, Elizabeth Butler, City of Omaha, Vaughn Cotton, Duane Eivins, Pete Festersen, Ben Gray, James Haley, Brinker Harding, Shawn Harper, Richard Hawthorne, Chris Jerram, Paul Lawson, Steve Martinez, Aimee Melton, Jason Menning, Rich Pahls, Vinny Palermo, Chris Perkins, Todd Schmaderer, Jean Stothert, Mike Sundermeier, Kurt Urkoski, and John Henige is granted as follows:

a. Claims against individual city defendants in their official and individual capacities are dismissed;

b. The Ninth Cause of Action, promissory estoppel, is dismissed with prejudice; and

c. The First, Second, Third, Fourth, Fifth, Sixth, Seventh, Eighth, and Tenth Causes of Action are dismissed without prejudice;

4. This case is terminated; and

5. A separate Judgment will be entered in accordance with this order.

Dated this 7th day of June, 2021.

BY THE COURT:

_____
Brian C. Buescher
United States District Judge